Coös, }
June 28, 1928. }

### RICHARD G. INGALLS *v.* MAINE CENTRAL RAILROAD.

*Crawford D. Hening* and *Matthew J. Ryan* (*Mr. Hening* orally), for the plaintiff.

*Shurtleff & Hinkley* (*Mr. Hinkley* orally), for the defendant.

MARBLE, J. "The rule in this state, when no trial except trial by jury is contemplated, is, that the plaintiff, before opening his case to the jury, may become nonsuit as a matter of right: after the case is opened, and before the verdict, leave to become nonsuit is within the discretion of the court: after verdict there can be no nonsuit." *Doe*, J., in *Fulford* v. *Converse*, 54 N. H. 543, 544. See also *Judge of Probate* v. *Abbot*, 13 N. H. 21; *Stevenson* v. *Cofferin*, 20 N. H. 288, 292; *Wright* v. *Bartlett*, 45 N. H. 289, 290; *Pollard* v. *Moore*, 51 N. H. 188, 191; *Farr* v. *Cate*, 58 N. H. 367; *Benton* v. *Bellows*, 61 N. H. 107; *Upper Coös Railroad* v. *Parsons*, 66 N. H. 181; *Simpson* v. *Gafney*, 66 N. H. 477.

While it has been said that permission to dismiss his action will

ordinarily be granted a plaintiff if no injustice is thereby occasioned the adverse party (*Judge of Probate* v. *Abbot, supra*) and that the incidental annoyance of further litigation, which may be compensated by costs, cannot be deemed prejudicial to the defendant in a legal sense (18 C. J. 1159), yet this statement is subject to the important qualification that some element of accident, mistake, or misfortune, as these words are usually interpreted, must enter into the situation before the plaintiff can rightfully invoke the court's discretion. It is true that a discretionary ruling like that in the present case must be based upon findings of fact, but the question whether such findings can reasonably be made is essentially one of law. *Bunten* v. *Davis*, 82 N. H. 304.

Reduced to simplest terms, the plaintiff's sole complaint is that the defendant did not see fit to present its case and thereby afford him an opportunity to cross-examine its witnesses. If, as the court finds, the plaintiff relied on the reasonable expectation that certain witnesses would be called, he did not disclose that fact by any formal motion made at the time the defendant rested, but proceeded with the trial. Whatever facts he may have hoped to elicit on cross-examination, he was nevertheless required to establish a *prima facie* case before the occasion for cross-examination arose. It seems to be conceded that the "witnesses of the occurrence" (presumably Bond and Fortin, later referred to) were available and that he could have summoned them if he had felt that his evidence was insufficient to justify a verdict in his favor. The defendant was not bound to offer its witnesses for cross-examination and would not be required to do so in case of a new trial. Consequently, the granting of the motion could confer upon the plaintiff no right with respect to the desired testimony which he could not have obtained by a simple request for permission to reopen the case and introduce the testimony as his own.

Although the trial was held at Lancaster on the defendant's representation that it could "more economically produce witnesses there in its employ," and although defendant's counsel during the trial expressed the intention of calling these witnesses, there is no suggestion that the defendant was committed to any definite course of conduct. On the contrary, the court has expressly found that "there was no representation by the defendant that any particular witnesses would be called." Moreover, the plaintiff does not pretend to have taken the statements or depositions of the witnesses, or even to have talked with them. So far as appears, their testimony is quite as likely to be detrimental as favorable to his cause. Under these conditions

the finding of the trial court that justice to the plaintiff required the allowance of the nonsuit cannot be sustained.

The defendant, however, does not question the plaintiff's right to a new trial if the motion for a directed verdict was properly denied. As the parties agree that the case is governed by the federal employers' liability act, the fellow-servant doctrine has no application. *Corbett* v. *Hines*, 80 N. H. 22; *Rockwell* v. *Hustis*, 79 N. H. 57; *Topore* v. *Railroad*, 78 N. H. 311.

At the time of the accident the plaintiff was employed as fire tender at the defendant's roundhouse in Lancaster. It was his duty to keep the boilers filled and the fires burning in the various locomotives until it was time for them to be used again. He was also expected to assist any workman who needed help so long as such assistance did not interfere with his own work. When a locomotive had completed its run, it was backed onto the ash track and turned over to a hostler, who would clear the fire of clinkers and ashes, after which the hostler's helper would dump the ashes and sprinkle them.

The accident occurred on the night of April 3, 1926. There were two locomotives on the ash track and the plaintiff had been attending to one of them. As he approached the other on his way to the engine house he found that someone, evidently the hostler, was cleaning the fire. Smoke and gas were rising from the hot ashes, and one Fortin, the hostler's helper, asked him how "to wet these ashes down." Since the engine was not equipped with a sprinkler, the only proper method was to attach a hose to the overflow pipe, which was located directly under the cab window, and to place the loose end of the hose in the ash pan. The hostler would then turn a wheel-valve in the cab, which permitted cold water to run from the tank through the overflow pipe into the hose. Connected with the overflow pipe was an injector, so called, the purpose of which was to force water into the boiler by the direct action of live steam. If this were attempted, however, while the outlet was open, the steam would be driven through the overflow pipe. Both the wheel-valve and the injector were inside the cab, so that steam could not be discharged through the hose unless someone in the cab first opened the overflow pipe and then pulled the injector valve. There was "a great pressure of steam behind that injector."

The plaintiff, having assisted Fortin to couple the hose and to insert it in the hopper, told Fortin to ask the hostler to turn on the cold water. He then took a few steps toward the engine house when a jet of steam came through the overflow pipe and swung the hose

about, causing it to strike him in the face and burn his eye. Immediately afterward, Bond, the hostler, jumped down from the cab and said to the plaintiff: "You're not burned any." From this it could be found that it was Bond who had been cleaning the fire and he who had applied the steam. The plaintiff did not hear Fortin ask Bond to turn on the water, but the result would be the same if this request was not made or even if Bond did not know that his helper and the plaintiff were near the engine. Bond was engaged in cleaning the fire and it was necessary and customary for the helper to put water on the ashes as soon as this was done. He was therefore chargeable with knowledge that his helper might be preparing for this work. Indeed, it is a fair inference that he had told Fortin to do the work, since it was the hostler who usually "directed when the ashes should be wet down" and it was then time for the performance of this task. The plaintiff was rightfully assisting Fortin, for it was the common practice for the workmen "to help one another and show each other if the other did n't know how." He testified that if there were engines on the ash track he "had to go out there and see to them after they had been left by the engineer." Under such circumstances his presence might reasonably have been anticipated.

The hostler had merely to open the wheel-valve and the water would flow through the outlet. Applying the steam as he did, with the overflow pipe open, might well be deemed a negligent act, whether he intended to inject water into the boiler or to accelerate its flow through the hose.

Since the plaintiff had never seen steam come out of the hose before, he did not, as a matter of law, assume the risk of injury from that cause. The defendant had the burden of proof on that issue. *Crugley* v. *Railway*, 79 N. H. 276; *Corbett* v. *Hines*, 80 N. H. 22; *Stowe* v. *Payne*, 80 N. H. 331.

*New trial.*

SNOW, J., was absent: the others concurred.