GURNEY THOMPSON *v.* JOHN COOLES.

(*August* 22, 1935.)

LAYTON, C. J., RICHARDS and REINHARDT, J. J., sitting.

*Knowles* and *Knowles* for plaintiff.

*William S. Satterthwaite* for defendant.

Superior Court for New Castle County, January Term, 1935.

LAYTON, C. J., delivering the opinion of the Court:

The rule, *res ipsa loquitur,* is invoked in aid of the first count, and it is to be determined whether it ought to be applied to the situation presented.

This doctrine has been recognized in this State in cases of injuries by machinery and dangerous agencies. In *Sweeney v. Jessup & Moore Paper Co., 4 Penn.* 284, 54 *A.* 954, the court, on demurrer, without opinion, held the rule to apply in the case of an explosion of a wood pulp digester. In *Wood v. Wilmington City Ry. Co., 5 Penn.* 369, 64 *A.* 246, the rule was applied in the case of an injury to a horse by an electric shock caused by its stepping upon a rail which had become charged with electricity. Also, in

*Edmanson v. Wilmington & Philadelphia Traction Co.*, 2 *W. W. Harr.* (32 *Del.*) 177, 120 *A.* 923, 924, the rule was held applicable where the plaintiff was injured by an electric shock caused by his touching a wire fence on his land against which a charged wire of the defendant company had fallen, thereby transmitting the current to the fence.

In *Starr v. Starr*, 5 *W. W. Harr.* (35 *Del.*) 556, 170 *A.* 924, application of the rule was denied in the mere skidding of an automobile; and in *Mitchell v. Atkins*, 6 *W. W. Harr.* (36 *Del.*) 451, 178 *A.* 593, the doctrine was refused recognition as against a dentist who had administered nitrous oxide gas to a patient preparatory to extracting a tooth, in the course of which operation the patient died.

In *Giles v. Diamond State Iron Co.*, 7 *Houst.* 453, 8 *A.* 368 (*Diamond State Iron Co. v. Giles,* 7 *Houst.* 557, 11 *A.* 189) the plaintiff did not rest his case on the rule, but upon a distinct averment of negligence in erecting a building with insufficient walls, and in violation of a city ordinance prescribing the thickness of walls.

In the *Wood Case* and in the *Edmanson Case* the rule is defined substantially as pronounced by *Erle, C. J.,* in *Scott v. London & St. K. Docks Co.*, 3 *Hurl. & C.* 596, where a passerby was injured by the fall of goods from a crane. In the *Edmanson Case* it was said that the doctrine applied "whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of the injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care," citing 20 *R. C. L.* 187.

██ In *Starr v. Starr, supra,* limitations of the doctrine were noticed. There, it was said that the rule was not an arbitrary one, but a simple rule of evidence, depending upon sound sense and reason, its application to be considered always with reference to the special facts of the case and the teachings of experience with regard to them; that it is not the naked injury, but the manner and attending circumstances of the occurrence that justify the application of the rule which is not of general application, or of exact classification; and, that the doctrine is of limited and restricted scope, ordinarily to be applied sparingly and with caution, in peculiar and exceptional cases, not in a manner to work injustice to a defendant, but only where the facts and demands of justice make the application essential. See *Anderson v. McCarthy Dry Goods Co.,* 49 *Wash.* 398, 95 *P.* 325, 16 *L. R. A.* (*N. S.*) 931, 126 *Am. St. Rep.* 870; *San Juan Light & Transit Co. v. Requena,* 224 *U. S.* 89, 32 *S. Ct.* 399, 56 *L. Ed.* 680.

The rule as stated and applied by the English Court in *Scott v. London, etc., Docks Co., supra,* upon the facts there presented, has spread rapidly in this country, and has frequently been applied in cases of injuries by falling objects. 20 *R. C. L.* 191; 45 *C. J.* 1200, *note c. on page* 1201.

Specifically, the rule has found application in cases of injuries sustained from the falling of plaster from ceilings, as is the case here, but, we think, without sufficient justification.

In *Morris v. Zimmerman,* 138 *App. Div.* 114, 122 *N. Y. S.* 900, 903, and in *Halterman v. Hansard,* 4 *Ohio App.* 268, the doctrine was applied where a guest in a hotel was injured by a fall of plaster from a ceiling of the room occupied by the guest; in *Law v. Morris,* 102 *N. J. Law* 650, 133 *A.* 427, 46 *A. L. R.* 1108, and in *Taylor v. Popular Dry Goods Co.* (*Tex. Civ. App.*), 10 *S. W.* (2d) 191, the

injured plaintiffs were customers in the stores of the defendants; and in *Bonita Theatre v. Bridges,* 31 *Ga. App.* 798, 122 *S. E.* 255, the plaintiff was attending a performance in the defendant's theatre.

In the last cited case, however, the court referred to a provision of the Civil Code making the owner of a building responsible to others for damages arising from defective construction, and held that it was the defendant's absolute duty to know the condition of the plastering. In the *Taylor Case,* it appeared that the plaster was applied directly to concrete, and there was testimony that no adhesive had been found positive in character between concrete and plaster. In *Morris v. Zimmerman,* there was a strong dissenting opinion by the presiding justice.

With deference to the courts which have seen fit to apply the rule, in actions of tort, to the mere fall of plaster from a ceiling causing injury, we are not convinced of the wisdom or necessity of its application to the situation disclosed by a count where the proof must be supposed to be no more than that the building was owned and controlled by the defendant, and that the plaintiff, an invitee, was injured by the fall of plaster from a ceiling, with nothing to indicate its weakened or dangerous condition, such as cracks, bulging or sagging, or of previous repairs thereto.

█ The rule does not apply to every cause of injury or accident, but only to those whose mere occurrence implies a breach of duty. *Gallagher v. Edison, etc., Co.,* 72 *Mo. App.* 576; nor does an unusual occurrence resulting in injury, of itself, raise the presumption of neglect, for the accident must be such as necessarily involves negligence. *Eaton v. New York Cent. & H. R. R. Co.,* 195 *N. Y.* 267, 88 *N. E.* 378; 45 *C. J.* 1211.

Judge Cooley with reference to the application of the

rule, quotes from *Zahniser v. Pennsylvania Torpedo Co.,* 190 *Pa.* 350, 42 *A.* 707, as follows:

"In cases where the duty is not absolute, but arises in the ordinary course of business, it is essential that the transaction was in the exclusive management of the defendant, and all the elements of the occurrence within his control, and that the result was so far out of· the usual course that there is no fair inference that it could have been produced by any other cause than neglect." 2 *Cooley, Torts* (3d *Ed.*) 1425.

■ As has been said, the doctrine is a mere rule of evidence by which a jury is permitted to infer negligence, or want of care, from the proof of injury and attendant circumstances. The presumption arising is one of fact, not law, and manifestly, if the rule be held applicable to a given situation, the decision is for the jury, not for the court. *Sinkovitz v. Peters Land Co.,* 5 *Ga. App.* 788, 64 *S. E.* 93; *Taylor v. Popular Dry Goods·Co., supra.*

■ ■ Now, negligence, in the abstract is a nullity. Concretely, it is positive or negative. It may consist in doing something which ought not to have been done, or in leaving undone something which ought to have been done. It involves the idea of a duty to act in a certain way toward others, and a violation of that duty by acting otherwise.

The term is relative, and its application depends upon the situation of parties and the degree of care and vigilance which circumstances reasonably impose. In a legal sense, negligence is no more or less than the failure to observe, for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury. *Diamond State Iron Co. v. Giles, supra;* or as said by Baron Alderson, in *Blyth v. Birmingham Water Works Co.,* 11 *Exch.* 784, a definition often quoted with approval:

"Negligence is the omission to do something which a reasonable

man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a reasonable and prudent man would not do."

If, therefore, the doctrine be applied to the mere falling of plaster from a ceiling, resulting in injury, the result is that these circumstances alone are to be considered as necessarily involving negligence on the part of a defendant in the construction of his ceiling, either with respect to the materials used, or in the workmanship, or, in failing to perceive the weakened and loosened condition of his ceiling, and to repair it, although there was nothing in respect of its original construction, or in its condition thereafter, to cause a reasonably prudent person to suspect its dangerous condition.

Professor Wigmore, *Wigmore Ev., Vol. 5, Section* 2509, is unwilling to predict what the final accepted shape of the rule will be, but says that one limiting consideration ought to be that "the apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection or user," and adds that the particular force and justice of the presumption consists in the circumstance that the chief evidence of the true cause is practically accessible to the defendant but inaccessible to the injured person.

If the inference of negligence is referable to the original construction of a ceiling, it is difficult to see the justice in holding a defendant responsible for all the complexities of the plastering art, the materials, proper mixing, the application and the drying out process, all of which determine a good or bad ceiling, and which may have lasted for years without noticeable defect, unless the defendant is regarded as an insurer. If the inference of negligence is referable to lack of inspection, then arises the query; does a reasonably prudent man, "guided by those considerations

which ordinarily regulate the conduct of human affairs," regard it as reasonably necessary to inspect and examine a ceiling the strength of which he has had no cause to suspect, and which has offered no visible indication, by cracking, sagging, or bulging, of an unsafe condition? We think not.

The doctrine is dangerous and uncertain at best. *Allen v. Kingston Coal Co.*, 212 *Pa.* 54, 61 *A.* 572; for assuming that a defendant has placed himself in a superior defensive position in that he is able to prove examination and inspection, yet the question is for the jury; the frequency and thoroughness of the inspection may be considered; and, in the last analysis, in spite of examination and inspection, the jury may, by an adverse verdict, regard the defendant as an insurer. The rule should not be employed for the purpose of creating negligence, for it is not so positive as to convert into negligence that which is due care except for the rule.

If the rule is to be applied in the case of a ceiling, there seems to be no sufficient reason why it ought not to be applied to injuries resulting from any other part of a building whose construction work may prove to be faulty or insufficient.

The defendant in such case is not an insurer. 62 *C. J.* 866. The law demands no more than the exercise of reasonable care. It is true that a property owner is responsible both for defects of which he has actual notice, and with those which would have been discovered by a reasonable inspection, 1 *Thompson, Neg.*, § 970; 62 *C. J.* 865; but, the duty to inspect must be a reasonable one, such as an ordinarily prudent person would regard as reasonably necessary.

The application of the rule was fair and just in the

fall upon a passerby of a barrel from a shop window and in the fall of goods from a crane, *Byrne v. Boadle,* 2 *Hurl. & C.* 722, *Scott v. London, etc., Docks Co., supra,* for in those cases there was a necessary inference of negligence. It is just to apply the doctrine, as it frequently has been applied, to overhanging wires conveying dangerous agencies; to heavy objects overhanging streets, subject as they are constantly to the deteriorating effects of the elements; and to powerful intricate machinery, harmless in normal operation, but capable of serious human injury if not properly constructed or managed, for in all such cases, the duty of constant inspection is in the mind of a reasonably prudent person, and the demands of justice require the application of the rule. See 1 *Thompson, Neg.,* § 1215.

But it seldom happens, except where injury results in death, that the person complaining of an injury is unable to show more than the mere fact that the accident happened, 6 *Thompson, Neg.,* § 7636; and, in our opinion, a sound public policy for the furtherance of justice does not require the application of this rule to an injury received by an invitee in a pool room from the fall of plaster from a ceiling with nothing more to suggest negligence.

The observations of Ingraham, P. J., in his dissenting opinion in *Morris v. Zimmerman, supra,* are reasonable and judicious. There, he said:

"Coming now to the accident in question, is this one in which from the nature of the accident it can be said that no such accident could ordinarily have occurred had defendants exercised the care that was required of them in maintaining this room in their hotel in a safe and proper condition for use? There was no evidence that this ceiling had ever been in a condition that required the defendants to repair it or of notice to the defendants that it was out of repair, or that there is any means by which a person can ascertain when a ceiling is about to fall. We have the bare fact that a ceiling fell. It was not an intricate machine which when maintained in order and properly operated cannot cause an injury, but an ordinary appliance in common use which under ordinary circumstances is entirely safe.

It was certainly as safe as the stairs in a house to which the public are invited, or to which the owner extends an implied invitation, or in any other appliance in such a house supplied for the common use of its tenants. * * * It is true that it is a most unusual thing for a ceiling to fall, but it seems to me that without some evidence as to what caused it to fall, or some evidence to show that its fall was the result of some failure of the innkeeper to ascertain the fact that it was unsafe or of some indication that it needed repair, the case lacks the proof of negligence essential to a recovery."

The demurrer to the first count is sustained.

With respect to the second count, the defendant contends that the averments therein do not raise any duty upon the defendant unless reliance is placed upon the doctrine, *res ipsa loquitur*. We agree.

As said in *Edmanson v. Wilmington & Philadelphia Traction Co., supra,* in every case of actionable negligence there must exist a duty, a failure to observe the duty, and resulting injury; but that if the facts stated raise the duty, the allegation is surplusage. In other words, the allegation of duty is superfluous where the facts stated show a liability, and it is useless where they do not. 6 *Thompson, Neg.,* § 7458.

The averment of negligence in this count raises an ambiguity. If the plaintiff intends to rely upon the knowledge of the defendant that the ceiling was in an unsafe condition, whether that knowledge was actual, or arising from an appearance which would indicate its unsafe condition to a reasonably prudent person, and having that knowledge, the defendant omitted to warn the plaintiff, he should so aver; but, as a part of the averment of negligence, the plaintiff places upon the defendant a duty to warn where "by a reasonable inspection of the ceiling" the defendant knew or should have known of its unsafe condition. It is uncertain from this language whether the plaintiff. means to rely upon proof that the ceiling was in such condition that, viewing it as a reasonably prudent person

would, its unsafe condition would have become apparent, or that, while there was nothing in the appearance of the ceiling to indicate its unsafe condition, yet an actual examination would have discovered the infirmity. If the negligence of the defendant is founded upon the first permissible construction of language, or meaning, the averment plainly is argumentative, and is lacking in the certainty and positiveness, which good pleading demands. If the negligence is based on the second construction, or meaning, then the facts do not disclose a duty unless the rule, *res ipsa loquitur*, is to be applied, and, in our opinion, the rule is not applicable.

The demurrer to the second count must also be sustained.