FLORENCE COOKE *v*. THE ELK COACH LINE, INC., a corporation of the State of New Jersey.

(*September* 23, 1935.)

LAYTON, C. J., and HARRINGTON, J., sitting.

*Robert G. Houston* and *Houston Wilson* for plaintiff.

*Albert L. Simon* for defendant.

Superior Court for Sussex County, No. 5, October Term, 1934.

LAYTON, C. J., delivering the opinion of the Court:

██ ██ Negligence, in law, involves the conception of a duty to act in a certain way toward others, and a violation of that duty by acting otherwise; so, in every case of actionable negligence, the declaration must disclose clearly the existence of a duty not to subject the plaintiff to the injury complained of, a failure of the defendant to observe that duty, and an injury to the plaintiff resulting proximately therefrom. The allegation of duty is superflous where the stated facts show a legal liability and it is useless where they do not. 6 *Thompson, Negligence,* §§ 7457, 7458; *Edmanson v. W. & P. Traction Co.,* 2 *W. W. Harr.* (32 *Del.*) 177, 120 *A.* 923; *Thompson v. Cooles,* 7 *W. W. Harr.* (37 *Del.*) 83, 180 *A.* 522.

██ We are not at all convinced, under the facts alleged, that it was the duty of the defendant company, which had assumed to carry the plaintiff a part of her journey under a through ticket, to deliver her at a place where it

would not be necessary for her to cross a city street in order to reach the place of departure of the connecting carrier. For all that appears the plaintiff was carried by the defendant to the usual place of stopping in Wilmington, and there is nothing alleged to show that by the contract of carriage the defendant was required to deliver the passenger immediately at the point of departure of the connecting carrier. The allegation of duty, as averred, is the pleader's conclusion, not justified by the facts alleged, and, of course, not admitted by demurrer.

A passenger bus company stands in a position differing from that of a railroad company, or a street car company. A railroad company, ordinarily has exclusive control over its stations and grounds where passengers are received or discharged, and in such case, the relation of carrier and passenger continues after the latter has alighted from the train for a period of time reasonably necessary to enable him to leave the carrier's premises. 4 *R. C. L.* 1045.

The vehicles of street car companies run on fixed tracks, and usually receive and discharge passengers on the streets. Ordinarily, when a passenger of a street car company is discharged safely on the street the relation of carrier and passenger ceases, even though the passenger is the holder of a transfer ticket entitling him to continue his journey on another street car line. See *Virginia Ry. & Power Co. v. Dressler,* 132 *Va.* 342, 111 *S. E.* 243, 22 *A. L. R.* 301, and the authorities there cited and discussed; and the risk of injury by passing vehicles is the risk of the passenger. *Oddy v. West End St. Ry. Co.,* 178 *Mass.* 341, 59 *N. E.* 1026, 86 *Am. St. Rep.* 482.

It is the duty of the operator of a motor bus to exercise reasonable care to see that the place selected for the discharge of a passenger is safe for that purpose. *Malzer*

*v. Koll Transportation Co.*, 108 *N. J. Law* 296, 156 *A.* 639. The safety of the place is within control of the driver, and the degree of care is proportioned to the danger. Usually it is possible to discharge passengers from a motor bus directly on the sidewalk, and to discharge a passenger upon the part of a highway devoted to vehicular traffic and thereby subject him to incident dangers, might not measure up to the degree of care required by law. See *O'Malley v. Laurel Line Bus Co.*, 311 *Pa.* 251, 166 *A.* 868; *Roden v. Connecticut Co.*, 113 *Conn.* 408, 155 *A.* 721. But here it does not appear otherwise than that the plaintiff was afforded a safe place upon which to alight and did alight safely on the sidewalk of the street. From that moment the defendant had no control over her movements or over provisions for her safety. The relation of carrier and passenger ceased, and the plaintiff assumed the status of a pedestrian. *Waldron v. Southwestern Bus. Co.*, 42 *Ohio App.* 549, 182 *N. E.* 596; *Lewis v. Pacific Greyhound Lines*, 147 *Or.* 588, 34 *P. (2d)* 616, 96 *A. L. R.* 718. Nor would the fact that the plaintiff was aged and infirm alter the situation. See *Wilson v. Detroit United Ry. Co.*, 167 *Mich.* 107, 132 *N. W.* 762.

The theory of the first count is arresting. This count does not aver a duty of the defendant's servant to instruct and direct the plaintiff in crossing the street, but alleges that it was the plaintiff's duty to accept such instruction and direction, and to depend and rely thereon, not only as to the place of alighting, but also as to the safety of the time and place when and where she should cross the street.

There are insuperable objections to this count. Every intendment is against the pleader. For all that appears the plaintiff was directed to cross the street at the street intersection, the usual place of crossing; that at the time it was broad day light and the condition of safety or danger

just as observable by and apparent to the plaintiff as to the driver of the bus; and that, at the moment when the instruction and assurance were given, the way was apparently safe as regards vehicular traffic on the street. If such were the situation, and the declaration disclosed no other, there was no negligence on the part of the defendant's servant, assuming a duty on his part in this respect. Logically the conception of the plaintiff's duty, as expressed; would release her from the obligation to exercise, for her safety, her own senses of sight and hearing, and would require her to follow implicitly the assurance of the defendant's servant, notwithstanding apparent and observable conditions of danger. See *Trimboli v. Public Service, etc., Transport,* 111 *N. J. Law* 481, 168 *A.* 572.

Even though it be assumed that the plaintiff maintained her status as a passenger after she had alighted safely from the bus, yet she was required to "use her senses and avoid all danger so far as she could in the exercise of reasonable care." See *Clayton v. Philadelphia, B. & W. R. R. Co.,* 7 *Boyce* 343, 106 *A.* 577; *Cohen v. Eastern Stages, Inc.,* 116 *Conn.* 210, 164 *A.* 383; *McGrath v. Delaware, L. W. & R. Co.* (*N. J. Sup.*), 100 *A.* 753.

As, however, the relation of passenger and carrier ceased when the defendant deposited the plaintiff in a place of safety on the sidewalk of the street, the direction, instruction or assurance alleged to have been given by the driver of the bus to the plaintiff, was beyond the scope of his authority and was not binding upon the defendant. It is conceivable that a situation may arise in which it becomes the carrier's duty, notwithstanding the passenger has alighted in a safe place, further to direct his movements as, for example, where a hole or obstruction in a street has been caused by the carrier itself and is not readily observable by an alighting passenger; but that is not the situation here.

See the reference to the exclusion by the trial court of evidence of direction given by the carrier's servant in *Wilson v. Detroit United Ry. Co., supra.*

Apart from the view that the declaration is insufficient in its allegations of the defendant's duty in the premises, the declaration fails entirely to disclose any causal relation between the negligences of the defendant, assuming that actionable negligences are averred, and the injury suffered by the plaintiff.

Negligence can never furnish the basis of an action for damage unless such negligence was the proximate cause of the injury suffered by the plaintiff; for, if an injury has resulted from some wrongful act or omission, but only through or by means of some intervening cause from which the injury followed as a direct and immediate consequence, the law refers the damage to the last or proximate cause. Damage cannot be laid to the door of a given negligent act as the proximate, or efficient, cause, when it appears that, subsequent to that negligence, a new independent and unexpected factor intervenes which, itself, appears to be the real and natural cause of the mischief. See *Island Express, Inc. v. Frederick,* 5 *W. W. Harr.* (35 *Del.*) 569, 171 *A.* 181; *Stucker v. American Stores Corporation,* 5 *W. W. Harr.* (35 *Del.*) 594, 171 *A.* 230, 233.

Conceding that proximate cause is usually for the jury, it being generally a mixed question of law and fact, yet, where the facts are undisputed and the inferences to be drawn therefrom are not open to reasonable doubt, it becomes the duty of the court to determine the question as a matter of law. *Stucker v. American Stores Corporation, supra.*

The test of intervening negligence as constituting independent, proximate cause as the sole legal cause, is such

negligence as is extraordinary, unexpected, not reasonably to have been foreseen, or, as expressed in the *Stucker Case, supra,* not "reasonably-to-be-anticipated-as-possible."

Applying this test to the facts alleged, and assuming negligence on the part of the defendant in any of the particulars averred, the defendant's agent was not bound reasonably to foresee that the plaintiff, although aged and infirm, yet possessed of her senses of sight and hearing, in the act of crossing the street at the usual place of crossing, would be struck by a passing automobile. Clearly, the declaration shows that the proximate, or efficient, cause of the injury and damage was the intervening negligence of the operator of the passing automobile. See *Waldron v. Southwestern Bus Co., supra; Lewis v. Pacific Greyhound Lines, supra.*

The facts alleged do not constitute actionable negligence and, accordingly, the demurrer is sustained.