Hillsborough, {
Dec. 7, 1943. } No. 3436.

IDA M. WATKINS *v.* ALVIN R. HOLMES.

RUTH E. MAKER *v.* SAME.

JOHN I. WATKINS *v.* SAME.

JOHN I. WATKINS *v.* JOHN NOYES.

54

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Booth* orally), for the plaintiff Ida M. Watkins.

*McLane, Davis & Carleton* and *Thorp & Branch* (*Mr. Branch* orally), for the plaintiff Maker.

*Devine & Tobin*, for the plaintiff John I. Watkins, furnished no brief.

*Sheehan & Phinney* and *Alvin A. Lucier* (*Mr. Arthur A. Greene, Jr.* orally), for the defendants.

PAGE, J.   The accident happened on the Daniel Webster Highway in Merrimack after dark on the evening of September 5, 1940. Mr. Watkins was driving his car south, and Noyes was driving the Holmes truck north.   The roadway was composed of two cement lanes, each ten feet wide, with broad shoulders.   Each vehicle was proceeding at a speed within forty-five miles an hour.   The truck was preceded by other north-bound cars.   According to Noyes, the one immediately in front of him slowed down, he applied his brakes, and his truck swerved left, out of control; he saw the lights of the Watkins car, but "it was too late, the accident happened."   When he applied his brakes he claimed that the vehicle next in front of him was distant some three hundred feet.

Watkins, however, testified that the distance was only one or two car lengths; when he saw the truck turn left, at a distance of one to two hundred feet from him, as if to pass the vehicle ahead of it, he (Watkins) turned right onto the shoulder in order to leave passing room for the truck, but the truck kept on coming, and there was a collision.   After the collision, the Watkins car rested with its left rear wheel on the westerly edge of the pavement.   All the other wheels were on the shoulder.   The front end of the truck was in contact with the left front of the Watkins car, whose left front wheel was findably some six inches off the pavement.   Since the impact forced the Watkins car back ten feet, and laterally one foot and five

inches westerly, it could be that at the moment of the collision Watkins' left front wheel was within a foot of the shoulder at most.

It is not now contended that Watkins on the evidence could be found negligent, and upon the record he may not be so found. The Presiding Justice charged the jury, without exception, that there was no evidence of his negligence. It is clear enough that the Court was not bound to find that the defendants were unduly prejudiced by the voluntary nonsuits, any more than they would have been by the granting of motions for involuntary nonsuits. Prejudice is nevertheless claimed because the Court failed in so many words to charge, as requested, that the nonsuits did not mean that the jury could not find that the defendants were free from fault. If the jurors, as reasonable men, needed to be told more than that the question of the defendants' fault was for them to decide, after a full discussion as to the basis of finding for or against them, it was enough for the Court to tell them, as he did, that the taking of the nonsuits was immaterial as bearing on the four actions submitted. *Ingalls* v. *Railroad*, 83 N. H. 397, cited by the defendants, is not in point, because they have no exceptions to the granting of the nonsuits.

The defendants argue that a nonsuit should have been granted on the theory that the cause of the accident was the inability of the driver to control the truck, this inability being due to an unknown and unforeseeable breaking of a roller bearing in the left front wheel of the truck. If the jury believed that the bearing was ever broken, they might reasonably believe that the break was the result, not the cause, of the accident. They could as reasonably believe that the swerving of the car was due to some defect in the steering apparatus. The jury was not bound to believe the mechanic's testimony that he had left the steering apparatus that morning in perfect condition.

The defendants excepted to the denial of their motions to strike from the record all evidence submitted by witnesses in the cases against John I. Watkins. In the course of the discussion of the motions, the Presiding Justice stated that he had in mind no evidence peculiar to the two cases mentioned. Counsel for the defendants did not then point out any evidence they claimed to be of that nature except a single exhibit, nor have they since. That exhibit was introduced when offered by counsel for John I. Watkins upon cross-examination of a witness named Joyal who was put on the stand by counsel for Ida M. Watkins. It is not correct to say that counsel for John I. Watkins must be deemed to have cross-examined Joyal in the case of *Watkins* v. *Watkins* solely. Counsel and his client were equally interested in the case of *John I. Watkins* v.

*Holmes* and in the case of the same plaintiff against Noyes.   Joyal's testimony and the exhibit were as relevant in those cases as in the others.

It is argued that the exhibit was not admissible on any ground. Joyal was a state police officer who investigated the accident and testified as to the length and course of the brake marks left by the truck.   He said that they were fifty-five feet long and "curved slightly."   On cross-examination by the counsel for the defendants, it appeared that Joyal had left his notes at home.   Counsel requested him to bring them after the midday recess, and he promised to do so.   But prior to the recess counsel for the defendants continued to cross-examine Joyal without reference to his notes.   Counsel confused the witness and made him say that it was fifty-five feet from the beginning of the brake marks to the point of contact.   On the theory that the truck was twenty feet long, he had to admit that the brake marks were at most thirty-five feet long.   (It was later established that the truck was twenty-five feet long.)   The defendants then tried in vain to have the reference to fifty-five feet in a hypothetical question stricken from the record.   The Court properly refused to do so until the situation had developed more fully.

Before recess, also, the counsel for the defendants tried to get Joyal to say that the brake marks, instead of curving slightly, went for some distance parallel with the middle line of the highway in the easterly lane, then crossed abruptly into the westerly lane.   To accomplish this purpose he used testimony of Joyal in the criminal proceedings growing out of this accident.   Joyal protested that the testimony referred to was not accurate.   Counsel for the defendants, as was asserted and not denied in argument before us, drew on the blackboard a chalk indicating the curve as abrupt.

After the recess, counsel for the defendants called for the original notes of the witness, obtained them, and cross-examined further by their use.   Among the notes was a diagram of the scene of the accident, made contemporaneously, or at latest the next morning.   It was this diagram that was admitted as an exhibit upon reëxamination of Joyal, over the defendants' objections and exceptions.   The diagram indicates with perfect clearness that the brake marks measured fifty-five feet to the rear (not the head) of the truck, and that they were curved slightly, not abruptly; indeed they were nearly straight.   In view of the way the witness had been muddled into contradiction of his own testimony as to the length of the marks and the graphic distortion of them in the chalk, it was highly proper that the jury should see contemporaneous graphic data on which the

witness based his testimony. In the search for the truth, it was at least discretionary for the Court to admit the exhibit as showing the meaning of the notes upon which cross-examination had been based. 3 Wig. Ev. (3d *ed.*), ss. 763–765. Compare *Ordway* v. *Haynes*, 50 N. H. 159, 164, 165; *McCarthy* v. *Railroad*, 92 N. H. 149, 152.

The defendants argue that it was prejudicial error to introduce evidence of Mrs. Watkins' expectancy of life, since there was no evidence that her expectancy had been reduced. That test may properly be applied in a death case, where the essence of the matter is that the expectancy of life has been shortened. But in this case the expectancy of life was relevant for a different reason. There was evidence that Mrs. Watkins had certain permanent injuries from which she must suffer as long as she may live. She was entitled to an award of damages measured in part by her probable length of life. It is claimed that "injecting the element of death . . . must have been prejudicial." We cannot see why. The jury knew that Mrs. Watkins must die at some time. Their knowledge of the probably appointed moment could not harm the defendants. Instead of being left solely to their common knowledge, the jurors were left with less to guess about, learning with relative accuracy what average experience is. In *L'Esperance* v. *Sherburne*, 85 N. H. 103, 110, 113, such tables were held inadmissible when there was no sufficient evidence of permanent injury.

Exception was taken to the testimony of Miss Maker concerning her visit to Dr. Kazanjian, a plastic surgeon of Boston, who did not testify. On direct examination Miss Maker testified without objection that she visited Dr. Kazanjian and was advised by him to have an undescribed operation on her nose for which his fee would be $300. On cross-examination by defendants' counsel, she answered in the affirmative the question, "Did Dr. Kazanjian advise you to have this nasal surgery to clear up the condition of your nose as to appearance and organically?" On redirect, Miss Maker was permitted to relate something more of the interview. Asked whether the doctor guaranteed results, she replied in the negative, subject to exceptions by the defendants. The trial Justice correctly ruled that the defendants had opened up the field of hearsay sufficiently for her to testify concerning the doctor's advice about an operation to "clear up" the condition. The objection now urged is that the admission of the question and answer involved prejudicial hearsay; the defendants' counsel urge that if they had been able to cross-examine the doctor, they might possibly have elicited matter from which they could argue the probability of a complete cure. Having

first elicited hearsay about "surgery to clear up the condition" as a basis for that very argument, they are in no position to complain that further hearsay was admitted to meet them on that ground. When counsel, in objecting to the question, said "Obviously no doctor would give a guarantee," he cut the ground from under his ability to claim probable cure effectively enough.

The defendants excepted to arguments concerning the testimony of the mechanic employed by Holmes. The mechanic testified that after the accident he removed the roller bearing from the left front wheel of the truck and found one roller broken, and the cup chipped all around. He then stated as his definite opinion that this was "the first cause of the accident." The bearing had disappeared before the trial, so it was not produced. On cross-examination the witness was asked whether at the criminal proceedings growing out of this accident he had been asked whether the broken roller was the probable cause of the accident, and had answered, "No, I don't think so, because if it would have been the cause of the accident, the other rolls would have been all chewed up." The witness denied having made such an answer. Then the following colloquy occurred: "*Mr. Davis:* Will you agree in your copy of the transcript, I have read the testimony absolutely correct? Do you agree to that? *Mr. Sheehan:* I think so."

That admission by counsel might be understood as an agreement that Mr. Davis had read correctly from a transcript of the testimony given by the witness. If counsel meant anything less he failed to express it. Then was the time to avoid argument that such was the case by saying clearly, "You have read correctly, but I do not admit that the witness made that statement, and it has not been proved that he did."

In their arguments, counsel for Watkins and Miss Maker both argued, subject to exception, that counsel for the defendants had admitted that the statement denied by the witness appeared in the transcript. That was an accurate statement of what the jury had heard. The defendants now urge that all that could properly be argued was that it was admitted that Mr. Davis read correctly words in the transcript. We can see no difference between saying, "You have read the words in the transcript correctly," and saying, "The words you have read are in the transcript." If the jury were left to infer more than the words precisely expressed, it was because counsel for the defendants had left the record in such shape that they could make the inference.

The exceptions to arguments that a defective steering apparatus

was the cause of the accident are based on the theory that the jury was bound to believe the testimony of the mechanic that he put the steering gear into perfect condition on the morning of the day of the accident. On the contrary, they could disbelieve that testimony, and believe that due care would have discovered and corrected the condition. The defendants take nothing by their exceptions to the Court's failure to charge, as requested, that there was no evidence that the defendants knew or ought to have known that there was a defect in the truck requiring attention. They could be found negligent in not knowing it.

Counsel for Ida M. Watkins argued, subject to exception, that Dr. LeBlanc testified that "there was a welding of those two bones, and he pointed out to you in this x-ray that these two bones were welded together . . . this inability to rotate the arm is due to a bone involvement." The doctor in fact testified, with reference to the X-ray of Mrs. Watkins' arm "pretty well extended," that it showed the two bones "coming down and coming together, which will impair to some degree the rotation of the arm." He further testified that the rotation will never be better than at present . . . about 85 per cent of normal. The X-ray represents the two bones as apparently interfering with each other. The argument was supported by the evidence, in spite of testimony by another surgeon which might be understood to the contrary.

The defendants requested an instruction, "If you find that John Noyes was compelled to act in any emergency created through no fault of his own, then your verdict shall be for the defendants even though some other course of action might have prevented the accident." No fault is now alleged with respect to the correctness of the charge given by the Court, except that no summarized instruction was given that there could be no liability if the only action open to the driver was instinctive action. The defendants rely on *Kardasinski* v. *Koford*, 88 N. H. 444, but without having called to the trial Court's attention, as was done in that case, the thought of instinctive action. The charge given in substance covered everything that was requested.

The questions raised by the motion to set the verdicts aside on the common grounds have been waived by failure to brief or argue them.

*Judgments on the verdicts.*

BRANCH and JOHNSON, JJ., did not sit: the others concurred.