MONICA MYERS, Plaintiff, v. JUDITH NICHOLSON, Defendant and Third Party Plaintiff, v. PHILLIP N. BRYANT and ANN WILDS, Third Party Defendants.

*(May* 28, 1963.)

LYNCH, J., sitting.

*David Snellenburg, II* (of Killoran and Van Brunt) for Plaintiff.

*Frank J. Miller* (of Walker, Miller and Wakefield) for Defendant.

*William Prickett* and *Warren B. Burt* (of Prickett and Prickett) for Third Party Defendant, Phillip N. Bryant.

*Robert B. Walls, Jr.* (of Coxe, Booker, Walls and Cobin) for Third Party Defendant, Ann Wilds.

Superior Court for New Castle County, No. 1063, Civil Action, 1962.

LYNCH, Judge.

Plaintiff sued defendant for injuries sustained in an automobile accident that happened on Delaware Memorial Bridge on September 8, 1961. This bridge goes over the Delaware River, connecting Delaware and New Jersey.

Plaintiff was riding as a passenger in a 1960 Cadillac, owned and operated by Third Party Defendant Ann Wilds. Three cars were in line, going from Delaware to New Jersey. All the cars were on the upgrade that leads to the crest of the bridge.

The car of Third Party Defendant Bryan, who was driving a Chrysler, was first in line; then came the 1960 Cadillac car in which plaintiff was riding and the Nicholson car, a Valiant, was third in line and to its rear.

An officer of the Bridge Police estimated the upgrade of the bridge at and near the ultimate point of collision was about 40—45 degrees and ascending to the bridge crest. The posted speed limit was 45 miles per hour on the bridge.

The complaint charged defendant (1) with failing to keep a proper lookout; (2) failing to keep control of her automobile; (3) driving at an excessive rate of speed and (4) following the Wilds car too closely in violation of Title 21 *Del. C.* § 4135(a). The defendant's answer consisted of a general denial.

The testimony at the trial showed the bridge has four lanes—two lanes for eastbound traffic and two lanes for westbound traffic. All three cars here involved were driving in the inside or left lane, and were proceeding—from Delaware to New Jersey—in an easterly direction.

All the testimony was to one effect—that all three cars were driving at or below the posted speed limit; that the

Wilds car was about a car length behind the Bryant car; and Miss Nicholson testified she had been driving about 5—6 car lengths behind the Wilds car.

Again, it is to be stressed, all the testimony was to one effect—that the day was clear and the weather dry. The traffic in the right lane of eastbound traffic was "heavy"; it was characterized as "bumper to bumper", making it impossible for a car in left lane of eastbound traffic to turn into right lane. There is a concrete medial strip in the middle of the bridge, separating eastbound traffic from the westbound traffic and sufficiently high to keep the traffic lanes separated. The rear of the Bryan car was damaged; the Wilds Cadillac was damaged in front and the rear; it sustained damages to radiator grille, the hood, to the headlights and front fenders, and also to the rear bumper, fenders and trunk top. The front of defendant's car was damaged.

The Bryan car was able to drive off and proceed after the accident, while the Wilds Cadillac and the defendant's Valiant had to be towed off the bridge.

The Bridge Officer testified that at the time of his investigation Mrs. Wilds stated to him that she did not know she was going to be struck from the rear; he testified also that all drivers had admitted there were two impacts.

Plaintiff testified she "was not aware of the traffic behind the Wilds' Cadillac", hence there is no dispute as to defendant's "lookout", "control", "rate of speed" or her distance behind Wilds' Cadillac. Mrs. Nicholson testified there was a "flash" of the brake lights on the Wilds car before it struck the rear of the Bryan car and she immediately applied her brakes, causing the skid marks, before she struck the rear of Wilds Cadillac. There was no other testimony as to defendant's operation of her Valiant automobile.

As the cars got up on the upgrade of the bridge span the Bryan car apparently slowed down momentarily but according to plaintiff almost immediately resumed speed momentarily and then stopped suddenly.

The Wilds car struck the rear of the Bryan car and then followed a second impact when the defendant's car ran into and struck the rear of the Wilds car.

The Bridge Police Officer testified that from the location of the debris—caused by the dropping of the accumulations from fenders and the underbodies of the cars between the Wilds car and the Bryan car and the location of the Bryan car as he reached the scene of the accident—indicated the Bryan car had moved forward about 5 feet, after the first impact—the one between the Wilds car and the Bryan car. The officer testified that the skid marks of defendant's car measured 35 feet back from rear wheels of defendant's Valiant; also that there was debris at, near and between the front of defendant's car and the rear of Wilds' car, and most of this debris appeared to be right at front fenders of defendant's Valiant and at rear end and fenders of the Wilds Cadillac and making it clearly appear the lighter Valiant didn't move forward after it struck Mrs. Wilds' Cadillac.

Plaintiff's testimony was that after Bryan had slowed down momentarily Mrs. Wilds was gaining on the Bryan car before the accident and she had to apply her brakes suddenly when her car got to less than a car length from the Bryan car and just before it came to a stop.

Plaintiff reiterated, on cross examination, that the Wilds Cadillac had been less than a car length behind the Bryan car when that car had first slackened its speed; that before the Bryan car had begun to pick up any speed the

Wilds Cadillac had been gaining on the Bryan car when it came to a stop right before the Wilds Cadillac and Mrs. Wilds struck it in the rear.

Defendant's testimony was that she was 5—6 car lengths to the rear of Mrs. Wilds' Cadillac; that she saw the Wilds Cadillac "going fast enough", in the lane ahead of her; it was passing the traffic in the right lane before it "flashed" its brakes and came to a stop about two car lengths ahead of her and the brake lights on the Wilds' car had gone out before the impact of her car with the Cadillac; that there was only one "flash" of brake lights on the Wilds Cadillac before it came to a stop; that it came to a stop because it hit a car, which she later learned was the Bryan car, and her Valiant hit the Wilds Cadillac immediately thereafter. Unshaken on cross examination she said the Wilds car did not slow down before its brake lights flashed the one time and before it struck the Bryan car.

When plaintiff rested, defendant Nicholson moved for judgment, following which there was some argument on her motion. Her counsel asked that the ruling on it be deferred until he completed defendant's case.

Defendant's attorney first read the following from the Bryan deposition, taken before trial:

"Q. So that the car that hit you had traveled a car length beyond the point of the impact before it came to a stop?

"A. Well, as I remember, her left front wheel, the—there's a division in the road, and her—she was jammed up against that curb and she couldn't move because the other wheel was crumpled up underneath.

"Q. I understand that but is your answer that she had traveled a car length beyond the point of impact to the point where she came to a complete stop?

"A. What, the car that hit me?

"Q. Yes.

"A. I don't know how far she traveled after she hit me because I had all I could do to tend to my own business at that time.

"Q. Well, you told me a minute ago that you came to a stop two to three car lengths beyond the point of impact.

"A. That is right.

"Q. And you said that she was two car lengths back of you, stopped, when you came to a complete stop.

"A. I said two or three, didn't I?

"Q. Two or three, all right. So that she may have stopped almost at the point of impaoct, is that right?

"A. That is correct.

"Q. And you say that because you think she ran into the curb on the lefthand side, is that right?

"A. Yes; I think after she hit me that her car swerved into that and it kind of chocked her. That's my personal opinion about it."

Plaintiff read no part of the deposition.

Next, defendant's attorney read a few questions and answers from the Wilds' deposition, taken before trial, none of which either adds to or detracts from plaintiff's case— and there were no controverted factual issues raised in it. Defendant then rested. No rebuttal testimony was offered and both sides rested. Defendant then moved for a directed verdict. Defendant's principal argument centered about the defense of "unavoidable accident". Further argument

was heard. The case was recessed to give the Court and counsel opportunity to examine pertinent authorities and after recess the Court announced its ruling.

The first question for decision is whether defendant can urge the defense of "unavoidable accident" in light of her answer which is no more than a general denial of the allegations of negligence set forth in the complaint. On examination of the law I have found it is generally held that "unavoidable accident need not be specially pleaded", 65 C.J.S. Negligence § 197, p. 922; 5 Frumer & Friedman, Personal Injury Actions, Defenses, Damages, Matthew Bender & Company, 1961; Vol. 9C, Blashfield, Cyc. of Auto. Law (Perm. Ed.) § 6132, and see *Lotta v. Oakland*, 67 Cal. App.2d 411, 154 P.2d 25, 27 (1944). I so rule.

Then I considered if the Supreme Court's ruling in *Ebersole v. Lowengrub*, 4 Storey 463, 180 A.2d 467 (1962) required I submit the question to the jury, notwithstanding the absence of any controverted issue of fact.

That case was decided on an appeal from a ruling on a motion for summary judgment, in which the plaintiff's case was dismissed. That case involved a six car collision on the Delaware Memorial Bridge. The plaintiff was the third driver in line and he sued the other five drivers.

Examination of the facts set forth in the opinion shows there were many areas in which there were indications that material facts were in dispute. The Supreme Court held in Ebersole (180 A.2d at page 470):

"Under no circumstances * * * will summary judgment be granted when, from the evidence produced, there is a reasonable indication that a material fact is in dispute. Nor will summary judgment be granted if, upon an examination of all the facts, it seems desirable to inquire thoroughly into them in order to clarify the application of the law to the circumstances."

It is interesting to note that defendant Lowengrub in the cited case was the first driver in line—just as was Mr. Bryan in our case. As to his "unexplained stop on the bridge" the Supreme Court said (Id.):

"* * *, it seems apparent that Lowengrub created a state of emergency resulting in a multiple car collision. If, therefore, his creation of the state of emergency was negligent, we think the jury could find that such negligence was a proximate cause of the collisions resulting from the condition negligently created by him. *Howe v. Neal*, 145 Conn. 187, 140 A.2d 318. We say this even though Ebersole makes it clear that he had his car under control and would have brought it to a stop prior to running into the rear of Clementee's car but for the additional propulsion caused by the impact of Becker's car. Quite obviously, there would have been no series of rear-end collisions absent the stopping of Lowengrub's car creating an emergency condition. If, therefore, Lowengrub was negligent in bringing his car to a stop, then we think it plain that a jury could find that that negligence was one of concurring proximate causes of the injuries."

As to the car that was behind Mr. Ebersole's car—and hit him in the rear of his car—the Supreme Court made the comment (Id.):

"* * * The only thing shown in the present record with respect to him is that he tried to bring his car to a sudden stop but was unable to do so without running into the preceding car driven by Lowengrub. There is nothing in the record to explain why it was that Clementee was unable to bring his car to a more gradual stop without colliding with the car in front. At least one reasonable inference from the circumstance is that he possibly was following too closely the Lowengrub car in violation of the statute to that effect, 21 *Del. C.* § 4135, and that this negligent act on

his part prevented him from bringing his car to a safe stop at a point which would have avoided the subsequent collision between the plaintiff's car and the Clementee car. This inference which we think not unreasonable is not explained away or negated by the evidence. If there is an explanation in favor of Clementee, it was incumbent upon him in moving for summary judgment to produce that explanation."

I consider in the case before me defendant's unquestioned testimony "explained away or negated" the "inference" she was possibly following the Wilds car too closely; her unchallenged testimony was that she was 5—6 car lengths behind the Wilds car, and this would mean anywhere from 77 feet to 110 feet, depending on whether she used her own Valiant car (with a bumper to bumper overall length of 184.2 inches) or the 1960 Cadillac (which has a bumper to bumper overall length of 225 inches) as the basis for comparison; certainly her testimony indicated she was not "tailgating" or following too close behind the Wilds car.

■ *Dietz v. Mead,* 2 Storey 481, 160 A.2d 372 (Sup. Ct.1960) plainly recognized the principle that an "inevitable or unavoidable accident" acts to exonerate a defendant from liability on the grounds of negligence, 2 Storey 485, 160 A.2d 375, where the Supreme Court said:

"An unavoidable accident is one which was not caused in any degree by the want of care or skill which the law requires of one under the circumstances of the particular case. * * * *This* does not necessarily *mean*[s] that such an accident must have been physically impossible under the circumstances for defendant to have prevented, but *only that defendant exercise care and prudence which the law holds every person bound to exercise.* * * * If there is evidence to sustain a charge of inevitable or unavoidable

accident, it should be given. * * * It has long been the practice in this state to do so. * * *" (Emphasis supplied)

In Dietz, our Supreme Court said, 2 Storey 487, 160 A.2d 376:

"* * * The testimony in this case showed clearly that the minor plaintiff left the sidewalk where she was just before the accident and ran into the street directly in the path of defendant's car. *Defendant was not bound to anticipate that the minor plaintiff would suddenly dart from a place of safety out into the street, directly in the path of defendant's automobile, unless the circumstances were such as to give her a warning that the minor plaintiff was likely to do so.* * * *" (Emphasis supplied)

Comparably, under the facts of the case before me, I do not believe Miss Nicholson was "bound to anticipate" the manner in which Mr. Bryan and Mrs. Wilds would operate their cars in the line ahead. No circumstances were shown which would "give her [Miss Nicholson] a warning" that Mr. Bryan would stop suddenly and cause Mrs. Wilds, driving as close to the Bryan car as it is admitted she did, to strike his car, and causing the left front car wheel of the Wilds' Cadillac to jam into the center dividing medial strip on the bridge, so as to show any reason to fasten liability on defendant. Then, too, is the consideration I am required to give to what Bryan did—an apparent unexplained stop on the bridge—a decisive factor? Cannot that be said to be a new independent and unexpected factor which intervened to cause the pile up so that even had the plaintiff been able to show some negligence on Miss Nicholson's part (which I determine she did not do), then Bryan's act, if he did what plaintiff said he did, was actually the real, intervening, supervening and proximate cause of the pile up, resulting in plaintiff's

being injured? Are these not circumstances which she was not required to anticipate? See generally on this *Island Express, Inc. v. Frederick,* 5 W.W.Harr. 569, 584, 171 A. 181, 187 (Sup.Ct., 1934); *Stucker v. American Stores, Inc.,* 5 W.W.Harr. 586, 159 A. 848 (Sup. Ct., 1934); and *Cooke v. Elk Coach Line, Inc.,* 7 W.W.Harr. 120, 127, 128, 180 A. 782, 784 (Super.Ct., 1935).

The former New Jersey Court of Errors and Appeals, in *McMillan v. Mather,* 131 N.J.L. 309, 36 A.2d 408, 409, and the Kentucky Court of Appeals in *Tate v. Collins,* 266 Ky. 322, 98 S.W.2d 938, have ruled that a trial judge has power to direct a verdict where the evidence in a case plainly shows that plaintiff was injured because of an unavoidable accident and no jury question was presented.

The late Chief Justice Layton ruled in the Elk Coach Line case, 7 W.W.Harr. 127, 180 A. 785 (Sept.1935) that:

"* * * where the facts are undisputed and the inferences to be drawn therefrom are not open to reasonable doubt, it becomes the duty of the court to determine the question as a matter of law."

He cited the Stucker case, supra, decided January 16, 1934, in an opinion written by the late and revered Josiah Wolcott, then Chancellor of the State of Delaware. In some cases, such as *Ken-Ten Coach Lines, Inc. v. Siler,* 303 Ky. 263, 197 S.W.2d 406; *Bewley v. Western Creameries, Inc., et al.,* 177 Okl. 132, 57 P.2d 859; *Hankamer v. Roberts Undertaking Co.,* Tex.Civ. App., 139 S.W.2d 865 (1940), error refused by Texas Supreme Court, 141 S.W.2d 587 (1940) and *Watkins v. Holmes,* 93 N.H. 53, 35 A.2d 395 (1943), the principle was conceded to exist but those courts did not apply it because issues of credibility were shown to be present, thus making a case for a jury. No issues of credi-

bility were raised here, the statements of the parties and the physical facts tend quite clearly to exonerate defendant. Defendant's motions are therefore, granted.