JENNIE MARENDINO, ADMINISTRATRIX AD PROSEQUEN-DUM OF THE ESTATE OF JAMES MARENDINO, ALSO KNOWN AS VINCENZO MARENDINO, DECEASED, PLAIN-TIFF-RESPONDENT, v. MORTON SPITZ AND SAMUEL SPITZ, DEFENDANTS-APPELLANTS.

Submitted October 28, 1938—Decided January 13, 1939.

For the plaintiff-respondent, *Edmund A. Hayes.*

For the defendants-appellants, *Hicks, Kuhlthau & Thompson* (*Douglas M. Hicks,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. Defendant appeals from a judgment entered in the Supreme Court in favor of the plaintiff-administratrix in a death case. The grounds offered and argued in support of the alleged error in the trial of the cause, in the main, relate to the action of the trial court in admitting, over objection, the testimony of one Edwin Snediker, and in refusing to strike out the testimony so adduced at the end of that witness's examination. The point in question was the life expectancy of the plaintiff's decedent at the time he met his death.

Plaintiff's counsel, in his examination of Mr. Snediker, proved that the witness had been engaged in the life insurance business for twelve years. The witness admitted that he was not an actuary but was familiar with mortality tables and that in his computation of life expectancy he "used" the American Men's Experience Table. He was asked (and this is the basis of the main point of the appeal) what insurance companies used the table in question. This was objected to as immaterial. The answer was permitted, the witness replying that all American insurance companies used the table. He was then asked if this was the standard recognized table. The witness answered that it was. Defense counsel objected on the same ground, i. e., immateriality. We see nothing whatever in this point. The desired information was certainly not immaterial. The witness was asked a further question—what was the life expectancy of a man aged forty-two according to the table. An objection was stated also on the ground that the information sought was immaterial. Manifestly, it was not immaterial. Rather it is a very important material element in the ascertainment of damages in a death case to prove what expectancy of life remained to the decedent at the time of his death.

At the conclusion of the direct examination of the witness, defendant's counsel asked no questions on cross-examination but moved to strike out the testimony of the witness on the ground that it was incompetent. Assuming, but not conceding, that the testimony was incompetent, the motion to strike

for a different reason than that previously urged when the answers to the questions were about to be made, was properly refused. No authority need be cited for this common sense proposition.

But the underlying argument of the appellant seems to be that it was error for the witness to have been allowed to testify as to life expectancy because, as it is argued in the brief, the mortality table was not produced and received in evidence; and the theory of this argument seems to be that mortality tables are indispensable as a basis for arriving at a proper assessment of money damages by the jury. We know of no such rule. Our statute providing for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default of another—the Death act, so called—was passed in 1848 (page 151, *Rev. Stat.* 1877, *p.* 294). The earlier cases, so far as we are aware, make no mention of mortality tables. The compensation to be paid comprehends pecuniary loss suffered by the death. In the case of *Paulmier, Admr.,* v. *Erie Railroad,* 34 *N. J. L.* 151 (at *p.* 158), Chief Justice Beasley said: "It will be observed that this rule assumes that the pecuniary injury designated by the statute is nothing more than a deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased. And it is upon this principle that our statute is to be applied. The jury must weigh probabilities, and to a large extent form their estimate of damages on conjectures and uncertainties. The office is a difficult one, and many errors will probably be committed." Indeed, when mortality tables first appeared as *indicia* of proof in a question like the one before us, they were received with much dubiety and uncertainty as to their competency, and this hesitation about accepting them arises, of course, from the fact that these tables are based upon the expectancy of that abstraction known as the "average man," and when courts were confronted perhaps with proof and argument that the decedent was stronger or weaker than the average man on whose expectancy the tables were based, it can readily be seen why the binding force sought to be

attributed to these tables was skeptically received. They finally were received and have been and should be submitted to the jury with cautionary instructions. Thus, while they are competent and useful, they assuredly are not indispensable and without them the jury may "weigh probabilities" and arrive at satisfactory findings. *New Jersey Zinc and Iron Co.* v. *Lehigh Zinc Co., 59 N. J. L.* 189, 192; *Camden and Atlantic Railroad Co.* v. *Williams,* 61 *Id.* 646; *Notto* v. *Atlantic City Railroad,* 75 *Id.* 826; *Dickerson* v. *Mutual Grocery,* 100 *Id.* 118 (*Cf.* 4 *Wigmore on Evidence,* § 1698; also *p.* 3600, *note*).

The only remaining ground of appeal is that the evidence of pecuniary loss to the plaintiff was not sufficient to sustain the verdict, but this question should not be considered now since the defendant argued the question of damages on rule to show cause before the trial court. The rule was discharged and that element of the case is concluded.

The judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 16.

*For reversal*—None.