HAZEL M. RUSSELL & *a. v.* FIRST NATIONAL STORES, INC.

*Upton, Sanders & Upton* and *Walter H. Gentsch (Mr. Robert W. Upton* orally), for the plaintiffs.

*Philip H. Faulkner* and *N. Michael Plaut (Mr. Plaut* orally), for the defendant.

BLANDIN, J.  The first count in the plaintiff Hazel M. Russell's declaration is in substance that there was a breach of an implied warranty that the lamb patties were fit for human consumption.  We believe the defendant's motion for a nonsuit on this count was properly denied.  The evidence was undisputed that she purchased these patties for her own exclusive consumption, as she was on a diet and could eat no meat except lamb or fowl, and gave the wherewithal to the cashier in the store in the form of a check endorsed by her husband to pay for them.  The law in this State, as well as the general rule, is that the statutory warranty of fitness (R. L., *c.* 200, *s.* 15 I) runs in favor of an "immediate purchaser." *Hazelton* v. *First National Stores, Inc.*, 88 N. H. 409, 410; *Howson* v. *Company*, 87 N. H. 200, 204, and authorities cited.  Taking the words "immediate purchaser" in their ordinary sense as meaning the person on the spot who deals directly with the seller  (see 42 C. J. S. 387-389)  it seems difficult to imagine a plainer case than that of this plaintiff who dealt directly

with the defendant purchasing the lamb patties for her own exclusive use. The fact that the husband stood idly by, except for furnishing the money, a not infrequent occupation of husbands, does not alter the situation. There is no evidence that he had any interest in or power of control over her with reference to the particular purchase. The case of *Pickering* v. *Pickering*, 6 N. H. 120, cited by the defendant was decided in 1833. It holds there is a rebuttable presumption that a wife acts as agent for her husband in managing household affairs. This idea may well raise nostalgic dreams in husbands' minds of a vanished era when husband and wife were one and the husband was the one. It can do little else under the circumstances here. The case was decided before the enactment of the statute greatly enlarging married women's rights (R. L., *c.* 340, *s.* 2, as amended by Laws 1949, *c.* 193) and in a period when there existed a conception of a wife's authority vastly different from that which now prevails. See *Parsons* v. *McLane*, 64 N. H. 478, 479; *Menard* v. *Cashman*, 94 N. H. 428, 433. A finding that the wife acted as her husband's agent in purchasing the patties would be unsupportable as there is no evidence of the essential element of the right of control by him. Restatement, Agency, *s.* 14; Seavey, Studies in Agency, *pp.* 76, 162, 163. We are not concerned here with a suit by the defendant against the husband where the wife's apparent authority would be in issue. *Cf.* Seavey, Studies in Agency, *pp.* 71, 72. The question is not who should pay for the patties but who was the immediate purchaser of them. This depends on the actual relationship between the plaintiff and her husband and not how it appeared to the defendant. The uncontradicted evidence of that relationship conclusively establishes that the wife and not the husband was the sole immediate purchaser and the Court correctly instructed the jury to this effect. See *Jensen* v. *Berris*, 31 Cal. App. (2d) 537. The case of *Hazelton* v. *First National Stores, Inc.*, 88 N. H. 409, cited by the defendant as authority for its claim that Mrs. Russell was her husband's agent was decided after an admission of counsel, apparently made for tactical reasons, had settled the status of the wife as an agent for her husband. As has been pointed out such is not the case here and for these reasons the *Hazelton* decision is not controlling on this issue.

The defendant contends nevertheless that if this be so there was error in submitting to the jury whether the plaintiff gave the defendant timely and sufficient notice of the breach of warranty within the meaning of R. L., *c.* 200, *s.* 49. So far as material this section provides that "if, after acceptance of the goods, the buyer fails to give

notice to the seller of the breach of . . . warranty within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor." There was evidence that the plaintiff was taken critically ill on May 30, 1947, and on June 17 was taken to the hospital whence she was discharged on July 4 of the same year. While in the hospital she was delirious much of the time and had no recollection of what went on. When discharged she was still a sick woman being partly crippled, suffering from confusion of vision and being confined to her bed for some two weeks. She did not know what ailed her until after she came home on July 4. The notice to the defendant was sent on July 10. On all the facts the question of whether the notice was given within a reasonable time was clearly for the jury. *Guarantee Trust Co.* v. *Company*, 79 N. H. 480; *Farm Bureau Ins. Co.* v. *Manson*, 94 N. H. 389, 394, 395.

Likewise the issue of the sufficiency of the notice was properly submitted. It sets forth the time, place and nature of the sale relied upon, the consequent illness of the plaintiff and the fact she looked to the defendant for damages for its breach of warranty of fitness. It included all the information to which the defendant was entitled. *Morin* v. *Stromberg*, 309 Mass. 146; *Truslow & Fulle* v. *Diamond Bottling Corporation*, 112 Conn. 181. So far as the *Hazelton* case sets a different standard we decline to follow it here.

We now turn to the defendant's exceptions to the admission of evidence, beginning with the question of the Carlisle table showing the average life expectancy of a person of the plaintiff's age. There was evidence that the plaintiff was suffering from permanent disability and the table was clearly relevant on the question of damages. See *L'Esperance* v. *Sherburne*, 85 N. H. 103, 113. The fact that she was not in perfect health is no ground for excluding this evidence. The jury were acquainted with her condition and were told by the Court to give the table "such weight as you consider it worth in determining the life expectancy of Mrs. Russell." This instruction states our law in plain terms which the jury could understand and the defendant's exception must be overruled. *Watkins* v. *Holmes*, 93 N. H. 53, 58; 6 Wig. Ev. (3d *ed*) s. 1698.

The defendant's next exception to the denial of its motion to strike out the testimony of the witness Lasaulce as too remote presents no question of law. *Hunt* v. *Company*, 94 N. H. 421, and cases cited. Lasaulce testified that pork scraps were ground into the lamb patties while he was working for the defendant in 1944 or 1945. The man in charge of the defendant's meat department for about eight years

testified in effect that the same methods were used in making lamb patties while Lasaulce was there as when the plaintiff purchased her patties. There was other evidence, which we will later discuss more in detail, tending to confirm the fact that the patties contained pork, and the Court's discretionary ruling is plainly sustainable.

Further exceptions relate to the testimony of physicians attending the plaintiff in effect that her illness was caused by pork in the lamb patties. The undisputed evidence was that pork was the only possible source of her trichinosis. As stated above it was findable that there was pork in the patties and there was further evidence that the plaintiff had eaten nothing which could have contained pork except these patties. The relevancy of the physician's testimony is obvious and it was properly admitted.

The defendant excepted to various instructions to the jury and to the failure of the Court to grant certain requests. By its first exception, that it was error to instruct as a matter of law that "the implied warranty applies to only the immediate purchaser and that Mrs. Russell was the immediate purchaser . . .," the defendant now seeks to raise the question whether the patties were purchased from it by either plaintiff. At the conference in chambers prior to the charge defendant's counsel apparently conceded that one of the plaintiffs purchased the patties of the defendant but claimed the husband was the one. In view of this it appears the exception was insufficient to warn the Trial Court of the claim now made and "for this reason, if for no other, it must be overruled." *Marchand* v. *Company*, 95 N. H. 422, 426. The defendant's sixth request of which issue is made, aside from being objectionable in asking the Court to deal with specific portions of the evidence (*Dane* v. *MacGregor*, 94 N. H. 294), is not applicable to this case. In substance it asks the Court to charge that the plaintiff could not recover if she were acting as her husband's agent. As has already been pointed out there was no evidence to warrant submission of this agency question.

The jury was correctly instructed that the plaintiff had the burden of proving by a balance of probabilities that her claims were correct. The Court followed this with a rather detailed resumé of the contentions of the parties. We believe the instructions upon this phase were sufficient. The defendant requested other instructions the import of which was that to recover the plaintiff must show she cooked the patties "properly and sufficiently." The Court denied them and instructed the jury that the warranty implied fitness only after "ordinary domestic cooking." This instruction is correct. *Holt* v.

*Mann*, 294 Mass. 21. The meat was labelled "lamb patties" by the defendant and the plaintiff was entitled to rely on this representation which she testified she did.

The defendant excepted to certain portions of the plaintiffs' argument wherein counsel said, in referring to alleged admissions introduced by the defendant of the plaintiff Charles H. Russell that the patties were bought at another store, that the defendant lacked a clear conscience and was trying to "cover up." Upon granting nonsuits in the plaintiff Charles' case on all counts the Court told the jury that evidence as to the admissions was withdrawn from their consideration. Plaintiffs' counsel then said to the Court and to defendant's counsel that he would withdraw his argument on this score. The Court replied "All right. I will allow you to withdraw it" and defendant's counsel said "If the argument is withdrawn, I will withdraw my exception." The argument was withdrawn but the Court neglected to instruct the jury not to consider it though requested by plaintiffs' counsel to do so. Nothing further was said by anyone on the subject and plaintiffs' counsel was justified in assuming that opposing counsel was satisfied and had withdrawn his exceptions. The Court's refusal to set aside the verdict implies a finding that the defendant was not prejudiced by this argument. We believe this finding sustainable and the exception is overruled.

We come now to the exceptions taken by the plaintiffs to the granting of defendant's motions for nonsuits and directed verdicts on the negligence counts in the plaintiff Hazel's suit and on all counts in the plaintiff Charles' suit. For reasons already stated we hold the nonsuit was properly granted on the count in warranty in the husband's action. However as it appears reasonable men could find that the plaintiff Hazel was injured through the actionable negligence of the defendant without fault of her own it follows that the nonsuit was improperly granted on the negligence counts in her suit. It could be found that the defendant undertook to furnish the plaintiff Hazel with lamb and in so doing acted negligently so that she, who was without fault, was injured. Under such circumstances our law says the plaintiff may recover. *Jackson* v. *Company*, 86 N. H. 81, 82-83, and authorities cited; *Cunningham* v. *Company*, 74 N. H. 435; Restatement, Torts, *s.* 552. "Lamb patties" was the label the defendant put on this meat and the plaintiff reasonably relying upon this misrepresentation, as the defendant intended she should, bought what she supposed were lamb patties. She testified she would not have purchased them had she known they contained pork. The evidence

was sufficient to warrant a finding that they did contain pork. The witness Lasaulce testified while he worked for the defendant in 1944 or 1945 that "whatever scraps there were around" went into the lamb patties. When asked of what these scraps consisted he replied "Pork, beef, veal." The defendant's manager claimed that the same methods for making lamb patties were used while Lasaulce worked there as when Mrs. Russell made her purchase. He testified that all scraps were put on the same platter though he denied the presence of pork scraps. He said that pork shoulders were put through the same grinder as was the lamb for patties. He further stated that after grinding pork a residue of some two or three ounces would be left but they washed out the pork before grinding lamb. The uncontradicted evidence is that the plaintiff ate nothing which could have caused her illness except these lamb patties.

Under all the circumstances a finding that the patties contained pork was clearly warranted.

The defendant's manager conceded that the label "lamb patties" meant that they were offered to the public as "strictly lamb." It is a matter of common knowledge that lamb may be eaten safely very rare or even practically raw. It was also known to both the plaintiff Hazel and the defendant that pork was dangerous unless thoroughly cooked. The plaintiff testified that she would not have purchased the patties had she known they contained pork. She stated that she put them in an oven "hot enough to bake a pie" and when she took them out "they appeared done." In any event it was for the jury to say whether, had the defendant warned her that they contained pork, she would have purchased them or if she had she would have cooked them more and avoided her illness. On all the evidence the defendant's causal fault on the count for negligent misrepresentation was for the jury. *Cunningham* v. *Company*, 74 N. H. 435; Restatement, Torts, s. 552. Likewise it was for the jury to say whether the defendant was liable as the plaintiffs claimed for negligently conducting its business.

As Mrs. Russell has already been awarded all damages to which she is entitled by the verdict in her favor on the warranty count there is no occasion for further action by her. Her husband, however, although he has no action on the warranty count since he was not an immediate purchaser has a right to have his case on the negligence counts for his consequential damages, not including medical expenses for which his wife has already recovered, submitted to a jury. See *Guevin* v. *Railway*, 78 N. H. 289. The fact that she

has a verdict on the warranty count does not bar his suit. *Pearl v. William Filene Sons Co.*, 317 Mass. 529. This result appears just since the defendant suffers no prejudice by being compelled now to answer to a claim to which it should have responded at the first trial. On the other hand to force Mrs. Russell to waive her verdict on the warranty count and try her case again on the negligence counts to secure rights for her husband which were wrongfully denied him at the insistence of the defendant would be wholly contrary to justice and our practice. The order is

> *In the case of the plaintiff Hazel, judgment on the verdict; In the case of the plaintiff Charles, exception to nonsuit on the warranty count overruled; new trial on the counts in negligence.*

JOHNSTON, C. J., was of the opinion that when the election of the wife to recover in contract becomes final (*Gehlen v. Patterson*, 83 N. H. 328), the husband will be barred from recovery in his derivative action in tort; otherwise he concurred: the others concurred.