63 N.J. Super. 476 (1960)
164 A.2d 773
ALPHONSE PABON, AN INFANT BY HIS GUARDIAN AD LITEM ALPHONSO PABON, AND ALPHONSO PABON, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
HACKENSACK AUTO SALES, INC., A BODY CORPORATE, AND FORD MOTOR COMPANY OF DELAWARE, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 10, 1960.
Decided October 31, 1960.
*483 Before Judges GOLDMANN, FREUND and KILKENNY.
Mr. Albert L. Cohn argued the cause for plaintiffs-appellants (Messrs. David & Albert L. Cohn, attorneys; Mr. Daniel Crystal, on the brief).
Mr. Sidney Dincin argued the cause for defendant-respondent Hackensack Auto Sales, Inc. (Messrs. Reid & Flaherty, attorneys; Mr. Henry J. Bendheim, of counsel).
Mr. William R. Morrison argued the cause for defendant-respondent Ford Motor Company of Delaware (Messrs. Morrison, Lloyd & Griggs, attorneys; Mr. Bruce M. Ramer, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
This appeal is from a judgment of involuntary dismissal, with prejudice, entered at the close of the plaintiffs' case. Suit was instituted for both personal injuries and property damage by Alphonso Pabon, as guardian ad litem of Alphonse Pabon, and also per quod.
On October 19, 1957, at about 2:30 A.M., on Route 4 in Paramus, Alphonse Pabon, then 19 years of age, was injured while driving a new Ford automobile purchased the previous month from defendant Hackensack Auto Sales, Inc. *484 (Hackensack), a franchised Ford dealer. Alphonse testified that he was traveling westerly, driving in the inside lane at about 35 to 45 miles per hour, and had decided to move over to one of the two slower lanes. When he turned his steering wheel to the right, it "locked," and he could not turn it back to the left. He stepped on the gas, thinking that this would free the wheel. When he realized that the wheel was still locked, he jammed on the brakes. The car continued out of control, hit and jumped the curb, and smashed into a pole at the side of the highway. The automobile was damaged to the extent of $1,800, and Pabon suffered injuries.
In addition to a claim of breach of warranty, plaintiffs alleged negligence on the part of defendants Hackensack and Ford with reference to a defective steering mechanism in Pabon's automobile. Negligence was charged in Ford's manufacture of an automobile containing a defective ball bearing assembly, in the sale by Hackensack of such defective vehicle, and in the failure of Hackensack to repair the defect after Pabon had reported to the dealer that the movement of the steering wheel was uneven and was accompanied by a "clicking" sensation. The allegations of breach of implied warranties of merchantability and fitness for a particular purpose were likewise predicated on the asserted defect in the vehicle. At the time of the accident, the car had been driven approximately 3,000 miles, over a period of about six weeks.
The trial of the action was commenced before the Law Division, Bergen County, sitting with a jury. At the close of plaintiffs' evidence, the trial judge entered an involuntary dismissal on the following grounds. With respect to the alleged warranties, the court held that Alphonse, and therefore his father and guardian ad litem, were barred by lack of privity of contract, since the car had been purchased in the name of the infant plaintiff's sister, Maxine Pabon. The trial judge refused to admit evidence that Alphonse, to the knowledge of Hackensack, had actually provided the *485 consideration for the automobile in question and was its sole user, and that Maxine had taken title at the suggestion of Hackensack's salesman because of Alphonse's status as a minor. In regard to the allegations of negligence, the court referred to evidence in the record that the ball bearings in the steering wheel were manufactured for Ford by the New Departure Corporation, and concluded that the type of defect disclosed by plaintiffs' proofs, a .03 inch flaw in the construction of one of the balls in the assembled bearing, could not have been discovered by Ford or Hackensack in the exercise of reasonably careful inspection.
On the appeal, plaintiffs assert that the trial court erred in its determinations with respect to both defendants and with respect to both of the issues, warranty and negligence. We will consider these contentions in the order in which they are raised.

I.

WARRANTY.
The trial of this case was completed before our Supreme Court rendered its decision in Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 413 (1960), establishing the rule that an implied warranty of merchantability extends in favor of all persons who, "in the reasonable contemplation of the parties to the warranty, might be expected to become a user of the automobile." Henningsen also struck down, as violative of public policy, the standard disclaimer and limitation of liability clauses contained in automobile manufacturers' and dealers' warranties. Ibid., at p. 404.
Plaintiffs allege, and defendants appear to concede, that the Henningsen rationale should be taken into account in deciding the instant appeal. The general rule in civil cases is that a change of the established law by judicial decision is retrospective. Fox v. Snow, 6 N.J. 12, 14 (1950); Johnson v. State, 18 N.J. 422, 428 (1955); Yonadi v. *486 Homestead Country Homes, Inc., 42 N.J. Super. 521, 528 (App. Div. 1956); Terracciona v. Magee, 53 N.J. Super. 557, 563 (Cty. Ct. 1959). Defendants do not attempt to bring themselves within the exception to this rule by showing that the retrospective application of the Henningsen decision would divest them of contract or property rights or impose upon them extreme hardship. See 14 Am. Jur., Courts, § 130, p. 345.
Defendants conceded, on oral argument, that Henningsen renders incorrect the ruling of the court below that Alphonse Pabon was barred by lack of privity from bringing suit against Hackensack and Ford for his personal injuries. Not only was Alphonse a member of the family of the nominal purchaser, Maxine Pabon, but it was Alphonse who first approached Hackensack with interest in the purchase of an automobile, who provided the consideration for the automobile  all within the knowledge of Hackensack's salesman  and for whose use the automobile was bought. Alphonse is clearly within the "distributive chain." Henningsen, supra, at p. 415.
With respect to plaintiffs' claim for damage to the automobile, the trial court cited Eggerding v. Bicknell, 20 N.J. 106 (1955), for the proposition that title to a motor vehicle may be transferred only in accordance with the statutory directive, N.J.S.A. 39:3-3 et seq., noted that title had not been so transferred to Alphonse, and therefore concluded that lack of privity prevented recovery by anyone other than Maxine Pabon.
Midway through the trial, plaintiffs attempted to amend their complaint to make Maxine Pabon a party plaintiff. Defendants resisted such amendment, and the court denied the request to amend. Considering the liberality with which our amendment rule, R.R. 4:15, has been construed, see Ajamian v. Schlanger, 14 N.J. 483 (1954), it is not clear in what manner defendants would have been surprised and prejudiced by the addition of Maxine Pabon as a party plaintiff. But the question is moot, as we are of the opinion *487 that error was committed in barring suit by the present plaintiffs for the property damage.
Where one purchases real or personal property in the name of a brother or sister, there is no inference that a gift was intended, but rather a presumption of a resulting trust. Pope v. Bain, 5 N.J. Super. 541, 546 (Ch. Div. 1949), reversed on other grounds, 8 N.J. Super. 263 (App. Div. 1950), which was reversed in 6 N.J. 351 (1951). 4 Scott, Trusts (2d ed. 1956), § 442, p. 3034. It is not contested that Alphonse supplied the consideration for the automobile in question. In the instant case, the presumption of a trust is strengthened by the proffered evidence of the negotiations between Alphonse and Hackensack's salesman, and the suggestion that Maxine took title only at the behest of the salesman and because of Alphonse's age. Additionally, there is testimony that Maxine bought a car for herself at the same time that she took title to the automobile to be driven by Alphonse. Moreover, the record clearly indicates that Alphonse was the sole and exclusive user of the automobile from the date of purchase to the date of the accident.
As beneficiary of the resulting trust, Alphonse was clothed with equitable ownership of the automobile. Damage to the vehicle affected his equitable rights, and he was entitled to recover for such damage as a real party in interest. R.R. 4:30-1. See Goldstein v. Commonwealth Trust Co., 19 N.J. Super. 39, 46 (Cty. Ct. 1952); 67 C.J.S. Parties § 10, p. 911. Had the consideration for the automobile actually been furnished by Maxine, the attendant circumstances might well have given rise to the conclusion that Alphonse was a third-party beneficiary, and entitled to sue in that capacity. N.J.S. 2A:15-2. See Burlew v. Hillman, 16 N.J. Eq. 23, 25 (Ch. 1863). A fortiori, as Alphonse himself provided the consideration, and as a gift from him to Maxine is negated by the facts, he has standing to sue on the contract.
Even granting that plaintiffs are not barred by lack of privity by virtue of the Henningsen decision, defendants *488 argue that breach of an implied warranty of merchantability, R.S. 46:30-20, or implied warranty of fitness for a specified purpose, R.S. 46:30-21(1), must still be proved by a preponderance of the probabilities, and urge that plaintiffs' proofs were sorely deficient in this respect. While it has been held that recovery for violation of an implied warranty does not depend upon proof of negligence or knowledge of the defect, Simon v. Graham Bakery, 31 N.J. Super. 117, 123 (App. Div. 1954), defendants contend that the existence of a manufacturing defect must still be proved, and that plaintiffs have not satisfied their burden in this regard.
It is true, as defendants assert, that the mere "scintilla of evidence" rule does not prevail in New Jersey, and that to enter an order of involuntary dismissal, the trial court need not be faced with an utter absence of all evidence of contradictory purport. Riley v. Weigand, 18 N.J. Super. 66, 71 (App. Div. 1952); Bratka v. Castles Ice Cream Co., 40 N.J. Super. 576, 587 (App. Div. 1956). To defeat a motion for dismissal, plaintiffs must establish a prima facie case by presenting sufficient proof from which the liability of defendants could logically and reasonably be inferred. Triggiani v. Olive Oil Soap Co., 1 N.J. Super. 55, 58 (App. Div. 1948). Of course, in passing on a motion made at the end of plaintiffs' case, the court must accept as true all of plaintiffs' proofs and all favorable legitimate factual inferences therefrom. The trial court cannot weigh the evidence. Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955); Barbarisi v. Caruso, 47 N.J. Super. 125, 129 (App. Div. 1957); Seipel v. Sevek, 53 N.J. Super. 151, 158 (App. Div. 1958).
Defendants say that to construe plaintiffs' proofs as permitting an inference that the injury to young Pabon was due to a manufacturing defect in the automobile would be allowing the jury to engage in "mere speculation." They appraise the quantum of evidence in the instant case as substantially smaller than in Henningsen, supra, where the *489 sudden, inexplicable, daytime, good-weather accident to Mrs. Henningsen was witnessed by an impartial observer, a bus operator approaching from the opposite direction. Here, defendants note, the crash occurred in the dark of early morning, on a wet road, with no known observers. Moreover, they point out that in Henningsen an inspector and appraiser, with 11 years of experience, advanced the opinion that something went wrong with the steering mechanism of Mrs. Henningsen's car and that the happening was due to a mechanical defect or failure. A further distinction is made in that the Henningsen vehicle went awry only 10 days and 468 miles after delivery.
Examining the evidence in a light most favorable to plaintiffs, we find considerably more than a mere scintilla of proof as to the nature of the defect which produced Pabon's injuries and damage to his vehicle. The infant plaintiff testified that, beginning about a week after he started driving the car, he on three separate occasions complained to Hackensack that the car was "rough" and that he was experiencing a "choppy" or "clicking" sensation upon turning the steering wheel. Plaintiffs' witness, Belowsky, gave testimony that upon examining the vehicle on the day after the accident, and after driving it with its noticeable "washboard" sensation, he discovered, in the steering housing which contains the ball bearing assembly, parts of a broken ball bearing. After he had made repairs to the steering mechanism, including the insertion of a new part, Belowsky tested the car and the steering was flawless.
Plaintiffs' expert witness, Isaac Stewart, a consulting engineer, testified that approximately two years after the accident he examined and tested the bearing balls which Belowsky had removed from the steering housing, and which were allegedly in the custody of young Pabon or his attorney during that intervening period. His conclusion was that the ball was fractured as the result of a forging lap or flaw on its surface, and that, with reasonable certainty, the ball bearing fell apart as a result of this flaw. Furthermore, *490 Stewart linked the defective condition of the ball to the unnerving "clicking" sensation experienced by young Pabon when he turned the steering wheel.
Defendants insist, however, that the sum of Stewart's testimony is mere conjecture as to whether the ball cracked as the result of a manufacturing defect or because of the severe impact of the collision. They focus their argument on Stewart's admission that the splitting of a ball could "possibly" be the result of an impact such as occurred when Pabon's vehicle ran into the pole. Defendants ignore, however, Stewart's emphatic statement that in this instance the collision did not cause the split in the ball, as the presence of "fatigue failure marks" necessarily indicated a gradual deterioration due to a manufacturing defect. Moreover, once the pre-existing defect in the ball is established, whether the actual breakage of the ball was the sole result of "fatigue failure" or was due in part to the impact of the collision does not affect defendants' liability. Jarnot v. Ford Motor Company, 191 Pa. Super. 422, 156 A.2d 568, 571 (Super. Ct. 1959).
The test of the sufficiency of evidence in a civil action is probability and not possibility. Berger v. Shapiro, 52 N.J. Super. 94, 100 (App. Div. 1958), affirmed 30 N.J. 89 (1959). Defendants' apparent effort to demonstrate the synonymity of these words  at least in the witness Stewart's vocabulary  is of no avail. Defendants would protest that their fortunes rise or fall with the changing of a single phrase, even of several letters. Yet words are often mere translations of experience, and our legal principles are but a reflection of an attempt to order the relations of men in the light of that experience. The precise line of demarcation is not easily drawn between conclusions which our experience labels as reasonably certain and those which are unlikely but cannot, in the nature of things, be discounted entirely. See South Side Pass. Ry. Co. v. Trich, 117 Pa. 390, 11 A. 627, 629 (Sup. Ct. 1887); 2 Harper & James, Torts (1956), § 20.2, pp. 1117-18. But when a *491 witness does draw the line, his mark is not to be denied. 7 Wigmore, Evidence (1940), § 1976, p. 121.
Plaintiffs' evidence, favorably considered, gives rise to the legitimate inference that a defective ball bearing assembly installed in Pabon's automobile at first engendered a "clicking" sensation and rendered difficult his steering of the car, and finally caused his steering mechanism to jam, resulting in the collision. There was ample evidence from which it might reasonably be inferred that the mechanical defect in the steering mechanism came into existence before delivery of the automobile to Pabon. Northern v. General Motors Corp., 2 Utah 2d 9, 268 P.2d 981 (Sup. Ct. 1954); Alexander v. Nash-Kelvinator Corporation, 261 F.2d 187, 189 (2 Cir. 1958). That the inference would be one of only probability and not of absolute certainty matters not. Plaintiffs were not required to negative the possibility that there may have been other causes for the accident. Flexmir, Inc. v. Lindeman & Company, 4 N.J. 509, 514 (1950); cf. Botta v. Brunner, 42 N.J. Super. 95, 105 (App. Div. 1956). Moreover, the circumstantiality of plaintiffs' proofs is readily explainable in terms of the nature of the alleged cause of the accident. The infant plaintiff could not reasonably have been expected to discover, prior to the collision, the existence of a defective ball bearing assembly. His evidence is necessarily an after-the-fact reconstruction of what, considering the circumstances and tell-tale signs which can be examined directly, probably did occur. Liability may be concluded, even though the evidence is circumstantial, as long as one may be led to a conclusion based on a preponderance of probabilities. Joseph v. Passaic Hospital Association, 26 N.J. 557, 574 (1958).
We find that plaintiffs have made out a prima facie case of breach of implied warranty, i.e., that the automobile was fit for driving. In view of the foregoing, reversal and remand are in order, and new trial must be had as to this issue.

*492 II.

NEGLIGENCE.
In relying upon the landmark principle of manufacturers' liability contained in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696 (Ct. App. 1916), and approved in New Jersey in Heckel v. Ford Motor Co., 101 N.J.L. 385 (E. & A. 1925), plaintiffs urge that sufficient evidence was presented from which negligence could be inferred in the failure of either Ford or Hackensack, in the exercise of reasonable inspection procedures, to discover the defective ball bearing assembly which, it could reasonably be found, existed at the time of manufacture and later produced the accident. In dismissing plaintiffs' negligence claim, the trial court relied upon plaintiffs' own proofs as conclusively showing that reasonable inspections were conducted by Ford of the assembled ball bearings, which arrived at Ford's plant intact from the manufacturer of these bearings.
The manufacturer of an automobile, in purchasing "assembled" parts of an approved pattern and standard quality from another reputable manufacturer, is entitled to place considerable reliance upon the efficiency and care of the original maker, and need exercise only reasonable precaution by means of inspection to ascertain whether the assembled or already-manufactured parts have been properly constructed. He is not an insurer, to users of the finished product, that such parts are free of defects. Martin v. Studebaker Corp., 102 N.J.L. 612, 615 (E. & A. 1926); M. Dietz & Sons, Inc. v. Miller, 43 N.J. Super. 334, 338 (App. Div. 1957); cf. Araujo v. N.J. Natural Gas Co., 62 N.J. Super. 88, 99 (App. Div. 1960); Hooper v. General Motors Corp., 123 Utah 515, 260 P.2d 549, 551 (Sup. Ct. 1953). See Prosser, Torts (1955), § 84, p. 502; 1 Stevenson, Law of Negligence (1954), § 192, p. 314. Though this rule has been severely criticized on the ground that the sponsor of a completed product should not be able to delegate *493 the duty of care with respect to any of its component parts, see 2 Harper & James, The Law of Torts, supra, § 28.28, p. 1596; Restatement, Torts, § 400, it is undoubtedly the law of this State that latent defects, not discoverable by reasonable inspection methods, will not result in the liability of the assembler or supplier. Moran v. Moore-McCormack Lines, 131 N.J.L. 332 (Sup. Ct. 1944), affirmed 132 N.J.L. 171 (E. & A. 1944). See Lipari v. National Grocery Co., 120 N.J.L. 97, 100 (Sup. Ct. 1938). What constitutes reasonable inspection is, of course, dependent on a number of factors, but requires essentially a balancing of the difficulties of effective discovery of the defect against the dangers inherent in the article produced. See Restatement, Torts, § 395, comment (a). See Annotation, 156 A.L.R. 479, 490 (1945).
In the instant case, plaintiffs' expert witness, Stewart, testified that to his own knowledge Ford receives the bearings, fully assembled, from the New Departure Corporation, admittedly one of the largest ball bearing manufacturers in the world and supplier of not only Ford, but most other automobile manufacturers. Stewart further said that there are no tests of a fully-assembled bearing that would disclose the presence of a forging lap, the defect allegedly here involved, and that the assembly would have to be dismantled and the individual balls subjected to self-destructive tests. While we express no opinion as to whether Ford was under a duty to take apart sample ball bearing assemblies and conduct inspections of the individual balls, we note that plaintiffs' counsel read into the record, on the trial court's hearing on the motion to dismiss, the following interrogatory and defendant's answer thereto:
"Q. State in detail the inspection and examination procedure followed by the defendants of * * * the ball bearing contained in the steering mechanism. Did the defendant follow that procedure in this case?"
"A. * * * the defendant Ford Motor Company states that its inspection and examination procedure as to ball bearings to be assembled in sector shaft rollers was as follows: A representative *494 number of ball bearings were selected from each shipment of bearings received from the independent manufacturer supplying the same and subjected to testings to insure that these bearings met the specifications required by the Ford Motor Company. The bearings were tested as to dimension, crush load and hardness, as well as other requirements. These tests were conducted at least every three days, and no shipment of ball bearings was used in production unless the representative samples passed the established tests. The inspection and examination procedure described was followed with respect to all bearings before installation in the sector shaft roller of all vehicles manufactured by Ford Motor Company, including the 1957 Ford belonging to Alphonse Pabon."
Answers to interrogatories may be introduced in evidence to the same extent as provided in R.R. 4:16-4(a) and 4:16-4(b) for the use of depositions. R.R. 4:23-10. Here, the interrogatory was apparently answered by an authorized agent or an officer of Ford Motor Company, and, being offered by the adverse party, was properly received in evidence by virtue of R.R. 4:16-4(b). While introduction of the interrogatories did not compel plaintiffs to abide by the answers given, R.R. 4:16-6 (also made applicable to interrogatories by R.R. 4:23-10; see Schnitzer & Wildstein, N.J. Rules Serv. A IV-495; Hirschberg v. Glattly, 10 N.J. Super. 199, 205 (App. Div. 1950)), the interrogatories and answers nonetheless formed a part of the assembled proofs and were properly considered along with the other evidence in passing on the motion to dismiss. See 4 Moore, Federal Practice (2d ed. 1950), § 26.35, p. 1204. While the court is constrained to interpret the evidence most favorably to plaintiffs, it must nonetheless consider all of the evidence presented. No attempt was made to contradict the quoted answer to the interrogatory. Plaintiffs appeared to believe that the answer aided their case.
We think otherwise. We consider plaintiffs' own evidence to demonstrate that Ford receives its ball bearings fully assembled, and that it subjects representative numbers from each shipment to reasonable inspection procedures. We do not agree with plaintiffs' contention that Ford is required to dismantle every ball bearing assembly and test every *495 ball for latent as well as patent defects. Where, as here, the assembled component was received from a reputable and presumably solvent manufacturer, Ford, and therefore Hackensack, had a right to rely, to the extent that they did, upon the care of the original maker, at least with respect to the type of defect here involved. Martin v. Studebaker Corp., supra.
The case of O'Donnell v. Asplundh Tree Expert Co., 13 N.J. 319 (1953), is not authority for defendants' position. In O'Donnell, plaintiff, a tree trimmer, was injured when an iron casting, part of a hook attached to his safety belt, broke, causing him to plunge to the ground. The court, in reversing an order of involuntary dismissal, held that the negligence of the supplier of the hook was for the jury to determine, such possible negligence being predicated on the supplier's personal determination, without reasonable inspection and testing, that the hook was suitable for tree-clearance work. The distinction between a situation involving justifiable reliance of a supplier and assembler on the skills of the manufacturer, and the case then before the court, was thoroughly treated by Chief Justice Vanderbilt, supra, at p. 338:
"Neither the manufacturer which assembled the hook nor the foundry which made the casting had given any indication that the hook could support the weight of a man's body, and in fact if inquiry had been made the defendant would have discovered that it was not suited for such a purpose. This is quite a different case from those wherein the vendor or supplier acts as the mere middleman, passing on the product of a reputable manufacturer. Cornelius v. B. Filippone & Co. Inc., 119 N.J.L. 540 (Sup. 1938). And it is a far cry from the case where the employer supplies his employee equipment manufactured by a reputable company to be put to the intended use, Stassett v. Taylor Iron & Steel Co., supra, 82 N.J.L. 631. It is also an entirely different case from those wherein the vendor is an assembler, or even a manufacturer, who utilizes parts manufactured by a third party, when the parts are intended for the purpose to which they are devoted by the vendor, Martin v. Studebaker Corp., supra, 102 N.J.L. 612. In those cases the duty of reasonable inspection may not make the vendor or supplier liable for latent defects. Here, on the contrary, the defendant *496 without proper investigation or testing applied an article manufactured for use with harness equipment to a use in connection with tree climbing equipment, where obviously human lives would depend upon its strength and durability."
There is no evidence that Ford or Hackensack put the assembled ball bearing to a use other than that intended by its manufacturer. The failure to discover the fatal defect, if any, was the failure of that manufacturer. The trial court's ruling that no evidence of negligence, in this regard, was produced on the part of Ford and Hackensack should be affirmed.
However, we believe that the trial judge erred in dismissing plaintiffs' negligence claim against Hackensack. There is adequate evidence to support a finding to the effect that Hackensack, through its authorized agents, was made aware of a mechanical imperfection in the steering mechanism of young Pabon's automobile and failed to exercise due care in ascertaining and correcting the defect. Pabon testified that on several occasions, having taken his automobile to Hackensack's service department, he proceeded to explain the "clicking" and "chopping" sensation to the service manager. The first such time was his return for a 500-mile checkup; he informed the service manager of the roughness in the steering and was told, "It's a new car. Don't worry about it. It'll wear out." Soon thereafter, the rear shock absorbers on Pabon's vehicle broke. While having them replaced by Hackensack, he again brought to the attention of the service manager the clicking in the steering. Again he was told not to worry. Alphonse testified: "He's the big man over there, so I believed him." On a third occasion, following a rainstorm during which the car was soaked, he took the car back to Hackensack to have the carpeting replaced. Once again, he brought the steering difficulties to the manager's attention. Again he was told not to worry about it, "`it's a new car * * * [a]all the other cars have it,' or something like that."
*497 The above testimony, if believed  and in reviewing a judgment of involuntary dismissal it must be believed  would permit a jury conclusion of liability on the part of Hackensack. As the vehicle was taken to Hackensack within the 90-day warranty period, the dealer was under a duty to replace parts, to make repairs in a safe and suitable manner, and to inspect the automobile for the defects complained of and which a careful inspection would have disclosed. Mazzietelle v. Belleville Nutley Buick Co., 46 N.J. Super. 410, 416 (App. Div. 1957). This duty now extends beyond the purchaser of the vehicle to foreseeable users. Cf. Henningsen v. Bloomfield Motors, Inc., supra.
Negligence may be inferred not only from Hackensack's failure or refusal to repair or even to examine the reported defect, but also from its representation to Alphonse that the steering deficiency was normal and should cause him no concern. A false statement negligently made, and on which justifiable reliance is placed, may be the basis for the recovery of damages for injury sustained as a consequence of such reliance. Russell v. First National Stores, 96 N.H. 471, 79 A.2d 573 (Sup. Ct. 1951); Restatement, Torts, § 552, especially Illustration 2; 1 Harper & James, supra, § 7.6, pp. 545-551; Prosser, supra, § 88, pp. 541-45; 23 Am. Jur., Fraud and Deceit, § 126, p. 917; 65 C.J.S. Negligence § 20, p. 427. The statement need not be a factual report, but may consist of an expert opinion. Justification for the imposition of a duty of care upon the speaker is found in the respective positions of the one making the representation and the relying party, the former purporting to exercise the skill and competency compatible with his profession or calling, the latter openly placing his faith on such reputed skill. There must be knowledge, or reason to know, on the part of the speaker that the information is desired for a serious purpose, that the seeker of the information intends to rely upon it, and that if the information or opinion is false or erroneous, the relying party will be injured in person or property. International Products Co. v. *498 Erie R. Co., 244 N.Y. 331, 155 N.E. 662, 56 A.L.R. 1377 (Ct. App. 1927). While privity of contract is generally thought to be a prerequisite to the right to recover for financial loss caused by a negligent statement, Kahl v. Love, 37 N.J.L. 5, 8 (Sup. Ct. 1874), where the resulting damage is physical in nature the test becomes one of foreseeability rather than contractual privity. Edwards v. Lamb, 69 N.H. 599, 45 A. 480, 50 L.R.A. 160 (Sup. Ct. 1899); Virginia Dare Stores v. Schuman, 175 Md. 287, 1 A.2d 897, 899 (Ct. App. 1938). Prosser, supra, at p. 543; see Restatement, Torts, Scope Note to Ch. 22; Note, 6 Rutgers L. Rev. 478 (1952).
Our courts have long found such a holding-out and justifiable reliance in the area of title examinations by attorneys, and have held that an incorrect representation as to the state of a client's title may constitute actionable negligence. Economy B. & L. Ass'n v. West Jersey Title Co., 64 N.J.L. 27 (Sup. Ct. 1899); Jacobsen v. Peterson, 91 N.J.L. 404 (Sup. Ct. 1918); Toth v. Vazquez, 3 N.J. Super. 379 (Ch. Div. 1949). But the duty is by no means limited to those engaged in the learned professions. For example, in Panica v. N.Y., N.H. & H.R. Co., 295 N.Y. 756, 66 N.E.2d 124 (Ct. App. 1946), defendant's brakeman, knowing that decedent wished to get off the train and knowing that the train was moving, told decedent, "Why you better get off," and "Go ahead." Decedent did get off, fatally injuring himself. Defendant's liability was predicated on the negligent representation of the brakeman that it was safe to alight from the train.
There is no reason why these principles should not be extended to the present factual situation. Hackensack's service manager undoubtedly had authority to make binding representations with respect to the mechanical condition of newly-purchased automobiles being serviced under his principal's ordinary 90-day dealer's warranty. See Restatement, Agency, 2d, § 257. While plaintiffs could not have required infallibility on the part of Hackensack, they were "nevertheless *499 justified in expecting a reasonable degree of competency in the formulation of an opinion and in the care with which the data upon which the judgment [was] based have been collected." 1 Harper & James, supra, at p. 550.
There is no indication from plaintiffs' evidence that the advice of Hackensack's service manager, upon which young Pabon was justified in relying, was anything more than a mere guess, based neither on past experience nor on careful scrutiny of the particular quirk in the infant plaintiff's vehicle. A finding of negligence is therefore permissible, and the court erred in removing this issue from the jury.
To summarize, the trial judge's dismissal should be affirmed only with respect to the alleged negligence of Hackensack and Ford in failing to discover the defective bearing ball prior to delivery of the automobile to young Pabon. With respect to the allegation of negligence premised upon Hackensack's conduct after receipt of a series of specific complaints from the infant plaintiff, a new trial is in order. Reversal and remand for new trial is likewise directed with respect to the asserted breach of warranty on the part of both defendants.
The above cause is remanded to the trial court for disposition not inconsistent with this opinion.