Rockingham
No. 6548

VIRGINIA BROMFIELD, ADMINISTRATRIX,
ESTATE OF LAWRENCE BROMFIELD

v.

SEYBOLT MOTORS INC. & a.

IAFOLLA CONSTRUCTION COMPANY

v.

SEYBOLT MOTORS INC.

SEYBOLT OIL SERVICE INC.

v.

SEYBOLT MOTORS INC.

September 28, 1973

*Shaines, Madrigan & McEachern (Mr. Paul M. McEachern* orally) for the plaintiffs Bromfield and Seybolt Oil Service Inc.

*Burns, Bryant, Hinchey, Cox & Shea* for Iafolla Construction Co.

*Devine, Millimet, Stahl & Branch (Mr. Shane Devine* orally) for Seybolt Motors Inc.

GRIMES, J. The main issue in this case is whether the evidence is sufficient to support the jury's finding that negligence on the part of Seybolt Motors Inc. in the repair of an oil truck was the cause of an oil leak which resulted in a fire causing the damages sought by the various plaintiffs. The cases were tried by jury resulting in verdicts for the various plaintiffs against Seybolt Motors Inc. Defendant's exceptions were transferred by *Batchelder,* J.

Seybolt Oil Service Inc. was in the business of selling various types of oil. It owned several trucks, one of which was the Mack in question. In September 1966, some trouble developed in the transmission and it was taken to Seybolt Motors Inc. for repairs. The pump which transmits the oil from the truck to the customer was located under the truck close to the transmission and was operated by a power takeoff from the transmission. In repairing the transmission, this power takeoff was disconnected, but it was denied by those who worked on the truck that the pump itself was in any way interfered with.

On the afternoon of September 20, 1966, a Dodge truck which Bromfield was operating while the Mack was being repaired broke down. In order to make a needed delivery to Iafolla, the work on the Mack was expedited so Bromfield could take it to make the delivery. There was testimony that after the power takeoff was reconnected to the transmission, it was engaged by Seybolt Motors employees; that the pump operated properly; and that there were no oil leaks. On leaving the garage with the Mack, Bromfield went to the bulk plant three or four miles away and put oil into the truck. He then drove some four to five miles to the Iafolla plant where he was to make the delivery. When his truck was in position, he engaged the power takeoff to the pump. He then left the cab and went to the rear to set the meter and make the delivery. A bystander called to him that there was a leak under the truck. Bromfield started toward the cab of the truck but there was an explosion which burned him

severely, caused damage to the oil truck of Seybolt Oil Service Inc. and a portion of the Iafolla asphalt plant.

It was agreed that Iafolla's damage was $12,449.37 and that Seybolt Oil Service was damaged in the amount of $7,100.00. The jury returned verdicts of $100,000 for the plaintiff Bromfield, $9,000 for Iafolla and $7,000 for Seybolt Oil Service. Lawrence Bromfield was released from the hospital 54 days after the fire where he had received treatment and skin grafts for a 50% body burn of which 85% was described as third degree. He died on November 17, 1970. His doctor testified that his death was causally related to the accident.

Defendant's motions to set aside the verdicts were denied subject to exception. It is too well settled to require citation that in deciding whether the evidence was sufficient to support the verdict, we must view the evidence most favorably to the plaintiffs.

John Wilson, a mechanical engineer, testified as an expert that he examined the pump after the fire and found one of three bolts which were supposed to hold two flanges together compressing a gasket was so loose as not to be capable of compressing the gasket. It was his opinion that this caused the leak and in turn the fire. It was his opinion that the condition existed when the truck was in the defendant's garage and that nothing happened after it left the garage which would account for the loose bolt. Although there was testimony that the pump was tested before the truck left the garage, the jury was not required to believe it. Given the evidence that the pump did not leak prior to being taken to the garage and the fact that the leak occurred the very first time the pump was used after leaving the garage, the jury could find that the bolt was loosened at the garage and negligently left loose. From the fact that the leak was not discovered at the garage, although there was evidence there was oil in each tank, the jury could also find that defendant either did not test the pump at all or did so negligently. Plaintiffs were not required to disprove the existence of all other possible causes of the accident. *Descoteau v. Boston & Maine R.R.*, 101 N.H. 271, 275-76, 140 A.2d 579, 583-84

(1958). We conclude that the verdicts were supported by the evidence.

Defendant also contends that the verdicts should have been set aside because they were inconsistent. It relies on the fact that the amount of the verdicts for Iafolla and Seybolt Oil Service Inc. differed from the stipulated damages. The verdicts were consistent on liability. Although there was a stipulation on damages, nevertheless the charge to the jury left it to them to determine the amount of damages. The fact that the jury returned verdicts in amounts different from the damages agreed upon does not require that the verdicts be set aside. In view of the stipulation, it was not error to grant the additur.

The defendant contends also that the court erred in allowing the jury to determine the life expectancy of Lawrence Bromfield without the introduction of expectancy tables. Although expectancy tables are admissible and may be considered by a jury (*Russell v. Stores,* 96 N.H. 471, 79 A.2d 573 (1951); *Watkins v. Holmes,* 93 N.H. 53, 35 A.2d 395 (1943); *Thibeault v. Brown,* 92 N.H. 235, 29 A.2d 461 (1942)), they are not required. *Raskus v. Allegheny Val. St. Ry. Co.,* 302 Pa. 34, 153 A. 117 (1930); *Marendino v. Spitz,* 121 N.J.L. 556, 3 A.2d 601 (1939); 30 Am. Jur. 2d *Evidence* §1112 (1967). There was evidence of the decedent's health before the accident and of his work habits and expert evidence of his probable work expectancy. There was sufficient evidence to allow the jury to find his probable life expectancy.

*Exceptions overruled; judgment on the verdicts.*

All concurred.