**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0774-17T2

212 MARIN BOULEVARD, LLC,
247 MANILA AVENUE, LLC, 280
ERIE STREET, LLC, 317 JERSEY
AVENUE, LLC, 354 COLE STREET,
LLC, 389 MONMOUTH STREET,
LLC, 415 BRUNSWICK STREET,
LLC, and 446 NEWARK AVENUE,

     Plaintiffs,

v.

CHICAGO TITLE INSURANCE
COMPANY,

     Defendant/Third-Party
     Plaintiff-Appellant,

v.

VESTED TITLE INC. and
SUSAN L. KRUGER,

     Third-Party Defendants,

and

CONSOLIDATED RAIL
CORPORATION,

Third-Party Defendant-
Respondent.

_____

Argued December 18, 2018 – Decided January 23, 2019

Before Judges Fisher, Geiger and Firko.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-5801-09.

John A. Piskora argued the cause for appellant (Loeb & Loeb, LLP, attorneys; John A. Piskora and Lindsay S. Feuer, on the briefs).

William D. Wallach argued the cause for respondent (McCarter & English, LLP, attorneys; William D. Wallach, on the brief).

PER CURIAM

This is the second time this matter has come before us. On the first occasion, we affirmed a partial summary judgment that concluded defendant Chicago Title Insurance Company was obligated to defend plaintiffs' title to Jersey City property conveyed to plaintiffs by third-party defendant Consolidated Rail Corporation. 212 Marin Blvd., LLC v. Chicago Title Ins. Co., No. A-3877-12 (App. Div. May 20, 2015) (slip op. at 2). Following that determination, plaintiffs and Chicago Title settled their differences, and the latter proceeded on its claims against Conrail. At the conclusion of a bench trial, the judge found Chicago Title was not entitled to any relief. In explaining why

2

we affirm the judge's rejection of Chicago Title's negligent-misrepresentation claim against Conrail, we start by briefly describing the history of this conveyance and the litigation that followed.

In ruling on Chicago Title's first appeal, we provided this overview of the circumstances and the parties' disputes:

> [O]n June 24, 2003, [Conrail] and SLH Holding Corporation (SLH) entered into a contract whereby Conrail agreed to sell SLH approximately 6.2 acres of real property, eight parcels in total, located on Sixth Street in Jersey City. SLH assigned its rights to plaintiffs, eight [LLCs] with the same sole member, Victoria Peslak Hyman, a Florida resident.
>
> The property included a former railroad facility called the Sixth Street embankment, which was created in the early 1900's, and which consists of a series of elevated structures made of earth-filled stone retaining walls connected by bridges. Conrail had used part of the embankment as a turnaround space for trains until 1994. By 1997, all tracks and bridges on the embankment had been removed, the embankment was no longer used as a railway, and the facility was dismantled.
>
> Prior to entering into the contract, Conrail sought and obtained the agreement of the New Jersey Department of Transportation to waive regulatory filings and publication requirements. Prior to closing, plaintiffs advised Chicago Title's agent, Vested Title, of the railway issues, and inquired whether Vested Title anticipated any problems with closing. Vested Title requested more information.

On July 11, 2005, Conrail advised plaintiffs that: the embankment was a "spur track"; in light of 49 U.S.C.A. § 10906, the Surface Transportation Board (STB) had no authority over it; and, consequently, no formal abandonment of the property needed to be filed. Plaintiffs provided this information to Vested Title.

On July 12, 2005, Conrail delivered eight quitclaim deeds to plaintiffs for the eight parcels in exchange for $3 million. Vested Title then issued eight policies, one for each parcel, effective July 18, 2005, that provided indemnity coverage of $3 million . . . with unlimited defense coverage. Specifically, the policies obligated Chicago Title to defend plaintiffs in any litigation in which a third-party asserted a claim adverse to plaintiffs' title.

[Id. at 3-4.]

After closing, plaintiffs sought subdivision approval from the Jersey City Planning Board. Relief was denied because the board concluded Conrail "failed to receive STB approval to abandon the railway." Id. at 5.

The board's determination gave rise to plaintiffs' action in lieu of prerogative writs; in response, the City of Jersey City filed a counterclaim, asserting the conveyances from Conrail to plaintiffs were void ab initio because Jersey City was not given notice of the sale pursuant to an alleged right of first refusal. Ibid. Jersey City also petitioned the STB for an order declaring that Conrail was required to obtain the STB's authorization to abandon the

embankment; plaintiffs intervened in that action, arguing the embankment was a spur track that didn't require authorization. Id. at 5-6.

In August 2007, the STB held the property was not a spur track but a rail line subject to its jurisdiction until abandonment was authorized. Id. at 6. This prompted further legal proceedings in federal courts in the District of Columbia, see City of Jersey City v. Consol. Rail Corp., 668 F.3d 741 (D.C. Cir. 2012); Consol. Rail Corp. v. Surface Transp. Bd., 571 F.3d 13 (D.C. Cir. 2009); City of Jersey City v. Consol. Rail Corp., 968 F. Supp. 2d 302 (D.D.C. 2013).

Plaintiffs commenced this action in November 2009, seeking a declaration that their title policies obligated Chicago Title to defend their title. In April 2011, a judge[1] granted summary judgment in plaintiffs' favor and awarded some of the counsel fees they sought. That judge also certified as final the orders memorializing those determinations, so Chicago Title filed an appeal and plaintiffs filed a cross-appeal. Although troubled by the arguably inappropriate certifying of those orders, we nevertheless deemed it more efficient to consider the merits of the parties' arguments. 212 Marin Blvd., slip op. at 9. Ultimately, we concluded that the judge correctly found Chicago Title was obligated to

---

[1] The judge whose rulings were questioned in the first appeal is not the same judge who tried and decided the third-party action prosecuted by Chicago Title against Conrail.

defend plaintiffs' title, id. at 18, and we found no abuse of discretion in the judge's disposition of the fee requests regarding the other lawsuits, id. at 20. In ruling on the cross-appeal, however, we found the judge erred in denying plaintiffs an award of fees in connection with their prosecution of this coverage action and in denying a request for prejudgment interest without explanation. Id. at 28.

After our disposition of the appeal and cross-appeal, and after the Supreme Court denied certification, 212 Marin Blvd., LLC v. Chicago Title Ins. Co., 223 N.J. 280 (2015), plaintiffs and Chicago Title amicably settled their dispute; their January 2016 settlement called for the dismissal of plaintiffs' claims in exchange for Chicago Title's payment to plaintiffs of $5,000,000.

Following the settlement, Chicago Title's third-party complaint against Conrail was prosecuted. Chicago Title sought relief from Conrail based on a variety of contribution and indemnification claims, as well as fraud and negligent misrepresentation. These claims were the subject of a two-day bench trial in April 2017. On August 31, 2017, the trial judge rendered a written decision and, a few weeks later, entered final judgment dismissing Chicago Title's claims against Conrail with prejudice.

A-0774-17T2

Chicago Title appeals, arguing the trial judge erred "by applying an incorrect legal standard to [its] claim for negligent misrepresentation" and "by misconstruing the established facts and making erroneous legal conclusions concerning Conrail's actionable misrepresentations of fact."  In finding no error in his application of settled legal principles and in deferring to the judge's findings of fact, we reject Chicago Title's arguments and affirm, substantially for the reasons provided by Judge Jeffrey R. Jablonski in his thorough and well-reasoned written opinion.  We add only the following additional comments.

In considering its arguments in this appeal, our focus rests largely on Chicago Title's claim that Conrail negligently misrepresented the property was not subject to the STB's abandonment authority.[2]  This tort theory, as our

_____

[2]  Chicago Title has not pursued its fraud claim in this appeal.  We also find its common-law contribution and indemnification claims lack support in the evidence.  By settling with its insureds in an amount that does not distinguish between that part of the settlement that incorporates damages for the alleged tort and those falling outside Conrail's alleged responsibility, Chicago Title lost the right of contribution against any joint tortfeasor based on that settlement. Sattelberger v. Telep, 14 N.J. 353, 367 (1954) (finding it "incumbent" on such a contribution claimant "to establish a common liability for the wrongful act, neglect or default made the basis of the judgment and the quantum of the damages ensuing from the joint offense"); accord Young v. Steinberg, 53 N.J. 252, 255 (1969).  Chicago Title was obligated to demonstrate, in its negligent-misrepresentation claim, that it was found responsible for the alleged joint tort and entitled to Conrail's share of that responsibility.  By relying on the settlement paid to plaintiffs, Chicago Title failed to establish these legal

Supreme Court has made plain, requires proof of "[a]n incorrect statement, negligently made and justifiably relied upon." Rosenblum v. Adler, 93 N.J. 324, 334 (1983); see also Green v. Morgan Properties, 215 N.J. 431, 457 (2013); Kaufman v. i-Stat Corp., 165 N.J. 94, 109 (2000); Masone v. Levine, 382 N.J. Super. 181, 187 (App. Div. 2005). We consider two aspects of this common-law tort: whether the statement in question was false or incorrect and whether Chicago Title justifiably relied on it. In examining these questions, we assume for present purposes that the Conrail statement that forms the basis for this claim was conveyed with the expectation it would reach Chicago Title, even though the statement was not made to Chicago Title but to its agent, Vested Title. 212 Marin Blvd., slip op. at 4.

Chicago Title chiefly claims a July 11, 2005 email sent by Conrail's counsel to Vested Title prior to the closing contained false statements. That email advised that "[t]he properties abandoned constituted 'spur tracks' over which the STB and previously the ICC had no authority pursuant to 49 U.S.C. §

_____

requirements because that settlement included sums not within the scope of Conrail's alleged responsibility. And Chicago Title couldn't pursue common-law indemnification from Conrail because Conrail was not in a "special relationship" with Chicago Title, the insurer of the parties to whom Conrail was conveying property. See Ramos v. Browning Ferris Indus., Inc., 103 N.J. 177, 188-89 (1986).

10906" and stated that "no formal abandonment of the property was ever filed." This email was not shown at trial to be false when made or, for that matter, even now. Although the reach of the STB's abandonment authority may have been the subject of litigation in other courts, as noted earlier, no definitive adjudication on that assertion has yet occurred.

The hotly-contested dispute between Jersey City and Conrail that followed the latter's sale of the property to plaintiffs has only been resolved in the most indirect way; abandonment authority has simply been assumed – never really declared – because of a stipulation ultimately reached. To briefly recount, the STB determined at the administrative level that it possessed abandonment authority over the property. In 2010, the United States District Court for the District of Columbia did not reach that question because it found Jersey City lacked standing to seek such a ruling. City of Jersey City v. Consol. Rail Corp., 741 F. Supp. 2d 131, 149 (D.D.C. 2010). The United States Court of Appeals for the District of Columbia, however, reversed that standing determination and remanded to the district court for further proceedings. City of Jersey City, 668 F.3d at 746. Only then did Jersey City and plaintiffs stipulate that the property "was conveyed to Conrail as a line subject to [the] STB's abandonment jurisdiction"; Conrail did not stipulate this fact, it only agreed to let it go

unchallenged. City of Jersey City, 968 F. Supp. 2d at 304-05.[3] Conrail's decision not to challenge the stipulation of abandonment authority is not the equivalent of a concession. More to the point, there is nothing about the stipulation that would suggest Conrail's contrary opinion years earlier – when the property was conveyed to Chicago Title's insureds – was inaccurate; the stipulation merely resolved the key factual dispute in Jersey City's federal claims. In other words, a 2012 stipulation that allowed the federal action to proceed to the next stage[4] was hardly conclusive of the dispute here: whether Conrail misrepresented the reach of the STB's abandonment authority to the property in question in 2005.

In short, the question posed by Chicago Title's negligent misrepresentation action against Conrail required proof that Conrail's statement

---

[3] Precisely, the district judge observed that, in July 2012, "the parties filed a joint stipulation in which plaintiffs [i.e., Jersey City, Rails to Trails Conservancy, and Pennsylvania Railroad Harsimus Stem Embankment Preservation Coalition] and intervenor-defendants [plaintiffs here] stipulated that the Harsimus Branch was conveyed to Conrail as a line subject to the STB's abandonment jurisdiction. They further stipulated that defendant Conrail and intervenor Attorney General of New Jersey would not raise any facts or arguments in opposition to that stipulation." 968 F. Supp. 2d at 304-05.

[4] The summary judgment entered in favor of Jersey City was later affirmed by the court of appeals by way of an unpublished order. City of Jersey City v. Conrail, No. 13-7175, 2014 U.S. App. LEXIS 3067 (D.C. Cir. Feb. 19, 2014).

10

was false <u>when made</u>. On that point, the trial judge, as fact finder, was entitled to determine that Conrail's July 11, 2005 email was a statement of opinion and not of fact. Although it is true that it has been said an alleged false statement for these purposes "need not be a factual report, but may consist of an expert opinion," <u>Rosenblum</u>, 93 N.J. at 334 (quoting <u>Pabon v. Hackensack Auto Sales, Inc.</u>, 63 N.J. Super. 476, 497 (App. Div. 1960)), we think it clear that the Supreme Court had in mind something different than an expression of opinion on a question so Byzantine that it confounded the federal courts for more than a decade and was only resolved when some combatants stipulated the fact and others, including Conrail, agreed not to dispute the stipulated fact.

This conclusion also dovetails with the trial judge's finding of an absence of persuasive evidence that Chicago Title justifiably relied on the July 2005 email in issuing title insurance for plaintiffs' benefit. Conrail agreed in June 2003 – nearly two years before the email – to convey the property in its "condition as of the date of Closing, including any violations of law," and without any representation as to the quality of Conrail's title. Vested Title issued the title commitment on behalf of its principal, Chicago Title, in 2004, and, as noted, the email was not sent until two days before the closing. The trial judge was entitled to conclude from these circumstances and from the testimony he

11

found credible that Chicago Title was not "detrimentally and prejudicially induced" into relying on the July 2005 email. In reaching this conclusion, the judge relied on what he described as the "credible testimony" of Conrail's counsel. He found that testimony "both reasoned and logical" and "entirely consistent with the documentary evidence," which revealed "the conveyance was legally permissible without the necessity to secure abandonment permission and specifically that the properties abandoned constituted spur tracks" over which the STB had no abandonment authority.

The judge also found credible and persuasive the testimony of Conrail's director of real estate. The judge found this witness testified "consistently, directly, and credibly." He determined the real estate director "belie[ved]" at the time of the closing that the premises consisted of

> a spur track rather than a rail line for which it was [the witness's] belief that no abandonment authorization would be necessary[,] [that] Conrail used and treated the parcel as a yard and switching track[, that] [t]he portion of the parcel at issue . . . was separate from any line of railroad that served the area[, and that] Conrail never downgraded the area, since the area had already been downgraded.

The real estate director also testified about discussions in March 1994 concerning demolition of the area and it was then determined there was no need for abandonment approval.

12

Not only was the judge persuaded by the credible testimony of Conrail's witnesses, but he also concluded that Chicago Title provided "no credible proof . . . that either party knew that the parcel was a designated rail line." The judge found the July 2005 email simply expressed "an opinion" as to what Conrail believed – based on all surrounding circumstances – at the time of the transaction and that it could not adequately support Chicago Title's negligent-misrepresentation claim.

Our standard of review requires that we defer to the judge's factual findings and credibility determinations in reviewing his conclusion that Chicago Title failed to establish all the elements of its negligent-misrepresentation claim. Rova Farms Resort, Inc. v. Inv'rs. Ins. Co., 65 N.J. 474, 484 (1974); accord Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016); Zaman v. Felton, 219 N.J. 199, 215-16 (2014).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0774-17T2